**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| PD FINANCE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-01603-JPH-TAB |
| | ) | |
| JOE D. FALL, III, | ) | |
| KATHERINE BRENNAN, | ) | |
| 337 CONGRESS LLC, | ) | |
| JON RICKEY, | ) | |
| TYLER RICKEY, | ) | |
| CLINT BAHME, | ) | |
| LOGAN WIGNELL | ) | |
| INVESTMENT GROUP, LLC, | ) | |
| and GOOD TIMBER, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................................................... iii

INTRODUCTION ..............................................................................................1

STATEMENT OF THE CASE...........................................................................1

LEGAL STANDARDS .....................................................................................4

ARGUMENTS....................................................................................................7

I.      This Court lacks subject matter jurisdiction, and therefore the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1)..............................................7

        A.      No federal question jurisdiction exists because Plaintiff has alleged a defective RICO claim – Plaintiff does not plausibly allege that Jon or Tyler Rickey conducted an enterprise through a pattern of racketeering activity......................................................................................8

                1.      Conducted an enterprise........................................................10

                2.      Through a Pattern...................................................................12

                3.      Racketeering Activity.............................................................13

                4.      1962(d) Conspiracy................................................................14

                5.      There was no injury to PD Finance's business or property......15

        B.      This action is barred by the *Rooker-Feldman* doctrine because it is a collateral attack on a final, Indiana state court judgment. ...............................16

II.     Even if this Court finds subject matter jurisdiction, the Complaint should be dismissed for failing to state a plausible claim. ...........................................17

        A.      Plaintiff's assignment limits standing to only the Lockburn Property.............18

        B.      There is no basis in the Complaint to support personal liability on the part of Jon or Tyler Rickey due to their relationship with the LLCS, and the corporate veil should not be pierced.........................................19

        C.      The remaining state law claims should be dismissed because they are defective and fail as a matter of law..............................................................21

                1.      Fraud and Pecuniary Loss......................................................21

2.      Constructive Fraud and Fraudulent Concealment.................22

3.      Conversion, Theft, and Pecuniary Loss. ..............................23

4.      Criminal Gang Control and Pecuniary Loss. .......................24

5.      Indiana RICO. .......................................................................25

6.      Indiana Home Loan Practices Act.........................................26

III.    If the Court does not dismiss this action, it should strike the immaterial
        and scandalous allegations surrounding the other properties besides
        the Lockburn Property..............................................................................28

CONCLUSION......................................................................................................28

## TABLE OF AUTHORITIES

**CASES**

*188 LLC v. Trinity Industries, Inc.*, 300 F.3d 730 (7th Cir. 2002 .............................................2

*Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440 (7th Cir. 2009)...............................4

*Aronson v. Price*, 644 N.E. 2d 864 (Ind. 1994) ........................................................................20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..............................................................................*Passim*

*Bank of Am., N.A. v. Knight*, 725 F.3d 815 (7th Cir. 2013)...................................13, 18, 23, 24

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)...............................................................*Passim*

*Bell v. Hood*, 327 U.S. 678 (1946)................................................................................................8

*Boyle v. United States*, 556 U.S. 938 (2009) .............................................................................11

*Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961 (7th Cir. 2000)................................15

*Browning v. Flexsteel Indus.*, 955 F. Supp. 2d 900 (N.D. Ind. 2013) ......................................10

*Browning v. Trans Union LLC*, 2025 U.S. Dist. LEXIS 28181 (S.D. Ind. Feb. 18, 2025) .....22

*Carr v. ABC Fin.*, 2008 U.S. Dist. LEXIS 39237 (S.D. Ind. May 13, 2008) ............................4

*DiLeo v. Ernst & Young*, 901 F.2d 624 (7th Cir. 1990)............................................................21

*E. Cent. Ill. Pipe Trades Health & Welfare Fund v. Prather Plumbing & Heating, Inc.*,
3 F.4th 954 (7th Cir. 2021) ..........................................................................................................5

*Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005) .............................5, 17

*Gamboa v. Velez*, 457 F.3d 703 (7th Cir. 2006) ........................................................................12

*Geinosky v. City of Chicago*, 675 F.3d 743 (7th Cir. 2012) .......................................................2

*Gibson v. Chicago*, 910 F.2d 1510 (7th Cir. 1990)....................................................................4

*Gordon v. Bank of New York Mellon Corp.*, 964 F. Supp. 2d 937 (N.D. Ind. 2013)...............24

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005)....................5

*Gunn v. Minton*, 568 U.S. 251 (2013)........................................................................................5

CASES [CONT'D]

*H.J. Inc. v. N.W. Bell Tel. Co.*, 492 U.S. 229, 237 (1989) ........................................................12

*Harold v. Steel*, 773 F.3d 884 (7th Cir. 2014) ................................................................5, 17

*Hart v. FedEx Ground Pkg. Sys. Inc.*, 457 F.3d 675 (7th Cir. 2006) .........................................4

*Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286 (7th Cir. 1989) ...............................6

*Hemi Grp., LLC v. City of New York*, 559 U.S. 1 (2010) ...........................................................16

*Herzog Contracting Corp. v. McGowen Corp.*, 976 F.2d 1062 (7th Cir. 1992) ........................8

*IP of a W. 86th St. 1, LLC v. Morgan Stanley Mortg. Capital Holdings, LLC*,
686 F.3d 361 (7th Cir. 2012) ..................................................................................................23

*Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994) .........................................................4

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................................18

*MDG Int'l Inc. v. Australian Gold, Inc.*, 2008 U.S. Dist. LEXIS 65450
(S.D. Ind. Aug. 22, 2008) ........................................................................................................22

*Med. Marijuana, Inc. v. Horn*, 145 S. Ct. 931 (2025) ..............................................................16

*Nike, Inc. v. Comercial Iberica De Exclusivas Deportivas, S.A.*, 20 F.3d 987
(9th Cir. 1994) ...........................................................................................................................8

*Papasan v. Allain*, 478 U.S. 265 (1986) .....................................................................................2

*Pringle v. Garcia*, 2014 U.S. Dist. LEXIS 56916 (N.D. Ind. Apr. 23, 2014) .........................25

*Prudential Oil Corp. v. Phillips Petroleum Co.*, 546 F.2d 469 (2nd Cir. 1976) ........................8

*Ratfield v. United States Drug Testing Labs., Inc.*, 140 F.4th 849 (7th Cir. 2025) .................16

*Roger Whitmore's Auto. Servs. v. Lake Cty., Ill.*, 424 F.3d 659 (7th Cir. 2005) .....................12

*Sedima v. Imrex Co.*, 473 U.S. 479 (1985) .................................................................................9

*Sherman v. Community Consol. Sch. Dist. 21 of Wheeling Twp.*,
980 F.2d 437 (7th Cir. 1992), *cert. denied*, 511 U.S. 1110 (1994) ...........................................4

*Silha v. ACT, Inc.*, 807 F.3d 169 (7th Cir. 2015) ........................................................................4

CASES [CONT'D]

*SJS Refractor Co., LLC v. Empire Refractory Sales, Inc.*, 952 N.E.2d 758 (Ind. Ct. App. 2011)..................................................................................................23

*Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580 (7th Cir. 2001) ......................................9

*Sprint Communs. Co., L.P. v. APCC Servs.*, 554 U.S. 269 (2008)...........................................18

*Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654 (7th Cir. 1992)....................................6

*Taylor v. Fannie Mae*, 374 F.3d 529 (7th Cir. 2004).........................................................5, 17

*Triad Assocs., Inc. v. Chicago Hous. Authority*, 892 F.2d 583 (7th Cir. 1989).........................4

*United States v. Farmer*, 38 F.4th 591 (7th Cir. 2022)..............................................................14

*United States v. Foston*, 108 F.4th 934 (7th Cir. 1986)..............................................................14

*United States v. Neapolitan*, 791 F.2d 489 (7th Cir. 1986) ......................................................14

*United States v. Turkette*, 452 U.S. 576 (1981) ...................................................................9, 10

*Waldon v. Indiana*, 829 N.E.2d 168 (Ind. Ct. App. 2005).........................................................25

*Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs.*, 536 F.3d 663 (7th Cir. 2008) ..............................................................................................6, 21

*Wright v. Associated Ins. Cos.*, 29 F.3d 1244 (7th Cir. 1994) ....................................................2

*Ziese & Sons Excavating, Inc. v. Boyer Constr. Corp.*, 965 N.E.2d 713 (Ind. Ct. App. 2012)..................................................................................................20

**STATUTES**

18 U.S.C. § 1961..........................................................................................................8, 9, 13, 14

18 U.S.C. § 1962...............................................................................................................*Passim*

18 U.S.C. § 1964...........................................................................................................................15

28 U.S.C. § 1331...............................................................................................................*Passim*

28 U.S.C. § 1332...........................................................................................................................8

28 U.S.C. § 1359...........................................................................................................................8

**STATUTES [CONT'D]**

28 U.S.C. § 1367...........................................................................................................16

Ind. Code § 23-18-3-3...........................................................................................19, 20

Ind. Code § 24-9 ..........................................................................................................26

Ind. Code § 24-9-2-7....................................................................................................26

Ind. Code § 24-9-3-7....................................................................................................27

Ind. Code § 34-24-2-1..................................................................................................23

Ind. Code § 34-24-2-6..................................................................................................25

Ind. Code § 34-24-3-1..................................................................................................24

Ind. Code § 35-45-6-1..................................................................................................25

Ind. Code § 35-45-6-2..................................................................................................25

Ind. Code § 35-45-9-3..................................................................................................24

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 9(b) ...............................................................................................*Passim*

Fed. R. Civ. P. 10(c) ......................................................................................................2

Fed. R. Civ. P. 12(b)(1)...................................................................................4, 7, 10, 28

Fed. R. Civ. P. 12(b)(6)........................................................................................*Passim*

Fed. R. Civ. P. 12(f)..............................................................................................4, 6, 28

**INTRODUCTION**

This action seeks to repurpose a final Indiana quiet title judgment into a federal racketeering case. Plaintiff PD Finance, LLC ("PD Finance")- an entity formed two (2) days before receipt of an assignment of claims from Pamela Goode – advances federal RICO and related state-law theories arising solely from a 2021 Marion Circuit Court judgment quieting title of 2502 South Lockburn Street (the "Lockburn Property"). The Complaint asks this Court to revisit and invalidate that state court judgment, and to expand the litigation to three additional properties that were never assigned to PD Finance and have no connection with any claim it owns.

PD Finance lacks standing to pursue claims concerning any property other than the one assigned to it, and even as to that parcel, the Complaint pleads no plausible basis for federal jurisdiction or for relief against Jon or Tyler Rickey individually. Rather than alleging specific misconduct by either Rickey Defendant, the pleading attempts to wrap prior state court quiet title proceedings into a broad "enterprise" narrative yet identifies no personal participation by Jon or Tyler in any transaction with the property's owner; no representation made by them; no predicate act attributable to them; and no facts to support veil-piercing or personal liability under Indiana's LLC statute. Their alleged involvement is limited to owning or managing certain LLCs – rules that do not create personal liability absent extraordinary circumstances not pled here – and the Complaint therefore amounts to an impermissible collateral attack on a final state court judgment and thus fails to allege any viable federal cause of action upon which relief can be granted.

**STATEMENT OF THE CASE**

This case arises from a series of transactions concerning the Lockburn Property. The property was owned by Clifford and Juanita Goode until their respective deaths in 2013 and 2018. (Compl. Ex. 2 [ECF. 1-2]). In December 2019, Katherine Brennan recorded a Small Estate

Affidavit which identified herself as an heir to Juanita Goode and executed a quitclaim deed that conveyed the Lockburn Property to 337 Congress LLC. (Compl. Exs. 3-4 [ECF Nos. 1-3, 1-4]). Shortly thereafter, 337 Congress LLC conveyed the property to Logan Wignell Investment Group LLC ("LWIG"). (Compl. Ex. 5 [ECF No. 1-5]).

In December 2020, LWIG filed a Complaint to Quiet Title in the Marion Circuit Court, Cause No. 49C01-2012-PL-044323. (Compl. Ex. 6 [ECF No 1-6]). On August 6, 2021, the state court entered a final judgment which quieted title in favor of LWIG. (Compl. Ex. 7 [ECF No. 1-7]). That judgment resolved ownership of the property as a matter of state law and remains final to this day. Neither Jon nor Tyler Rickey were parties to that quiet title action, and the Complaint has alleged no personal participation by either Defendant in that judicial proceeding.

Two years later, in April 2024, Pamela Goode executed a quitclaim deed which conveyed any residual interest she had in the Lockburn Property to Good Timber LLC. (Compl. Ex. 9 [ECF No. 1-9]). Good Timber LLC presently holds title under that recorded deed. The Complaint alleges that this 2024 deed was executed after discussions between Pamela Goode and Defendant Joe Fall. It does not allege that Jon or Tyler Rickey communicated with Pamela Goode, made any representation to her, or played any role in the 2024 transaction.

PD Finance was organized in Delaware on August 6, 2025 – years after the Small Estate Affidavit, the quiet-title judgment, and the 2024 deed. This Court may take judicial notice of the attached public record regarding the entity PD Finance.[1] (Exhibit A, Delaware Department of

---

[1]    *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 n. 1 (7th Cir. 2012) ("A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice. *See* Fed. R. Civ. P. 10(c) (written instrument that is exhibit to pleading is part of pleading for all purposes); *Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986) (judicial notice of public records); *188 LLC v. Trinity Industries, Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (documents referred to in complaint and central to claim); *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994) (same).").

State, Division of Corporations, File No. 10286864, https://icis.corp.delaware.gov/ecorp/entitysearch/namesearch.aspx, accessed 11/17/2025). Two days after its formation, on August 8, 2025, Pamela Goode executed an "Assignment of Rights and Claims" which transferred any causes of action that may have arisen from the Lockburn Property to PD Finance. (Compl. Ex. 1 [ECF No. 1-1]). The assignment identifies no other parcel, owner, or claim.

Despite this limited assignment, the Complaint devotes over thirty (30) pages to three other properties; (i) 4415 Kingsley Drive; (ii) 317 North Oxford Street; and (iii) 1801 Winfield Avenue – and included exhibits related to unrelated owners, heirs, and quiet title proceedings in which neither Jon nor Tyler Rickey are alleged to have personally participated. No claims related to these other properties were assigned to PD Finance, and none involve Pamela Goode or any interest she could have conveyed.

Relying on this broader narrative, PD Finance alleges that a group of Defendants – including Jon and Tyler Rickey – participated in a wide-ranging real estate theft enterprise. (Compl. ¶¶ 6-40). But as to Jon and Tyler specifically, the Complaint alleges only that they have "ownership" or "management" roles in certain LLCs; it identifies no personal conduct, no communication with Pamela Goode, no predicate act, and no basis for imposing individual liability. PD Finance filed this federal action on August 13, 2025, asserting federal-question jurisdiction based solely on a defective RICO claim and seeking damages related to the Lockburn Property and to other properties it does not own. The allegations are largely circumstantial and consist of generalized statements that Defendants worked together or benefitted from prior Indiana state-court proceedings.

Defendants now move to dismiss the Complaint under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, Rule 12(b)(6) for failure to state a claim, and in addition to or alternative of dismissal, Rule 12(f) to strike the immaterial and prejudicial allegations concerning the other properties unrelated to the Lockburn Property or Pamela Goode.

## LEGAL STANDARDS

"The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. Chicago*, 910 F.2d 1510, 1520-21 (7th Cir. 1990) (quoting *Triad Assocs., Inc. v. Chicago Hous. Authority*, 892 F.2d 583, 586 (7th Cir. 1989)).

## I.    Fed. R. Civ. P. 12(b)(1)

Under Fed. R. Civ. P. 12(b)(1), the party invoking federal jurisdiction bears the burden of "demonstrating its existence." *Hart v. FedEx Ground Pkg. Sys. Inc.*, 457 F.3d 675, 678 (7th Cir. 2006). A Rule 12(b)(1) motion may raise either a facial or factual challenge to jurisdiction. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009). In resolving a factual challenge, "the court may look beyond the pleadings and view any evidence submitted to determine if subject matter jurisdiction exists." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015).

Federal courts "are courts of limited jurisdiction and unlike state courts, are not vested with 'inherent' or 'general' subject matter jurisdiction." *Carr v. ABC Fin.*, 2008 U.S. Dist. LEXIS 39237, at *1-2 (S.D. Ind. May 13, 2008); s*ee also Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (federal courts are courts of limited jurisdiction; only possess power authorized by Constitution and statute). The first order of business for a federal judge is to consider jurisdiction. *Sherman v. Community Consol. Sch. Dist. 21 of Wheeling Twp.*, 980 F.2d 437, 440 (7th Cir. 1992), *cert. denied*, 511 U.S. 1110 (1994).

Under federal question jurisdiction, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  "For a case to satisfy § 1331 by 'arising under' federal law, however, it is not enough for a plaintiff to merely call upon a constitutional provision, a federal statute, or a principle of federal common law in the complaint.  *E. Cent. Ill. Pipe Trades Health & Welfare Fund v. Prather Plumbing & Heating, Inc.*, 3 F.4th 954, 958 (7th Cir. 2021).

The Supreme Court has recognized two avenues for claiming federal question jurisdiction: (1) the case arises under a federal law which explicitly creates the cause of action asserted; or (2), a "rare circumstance" described in *Grable* where a state-law claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing the congressionally approved balance of federal and state judicial responsibilities."  *Id*. at 958-59 (citing *Gunn v. Minton*, 568 U.S. 251, 257 (2013); *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)).

## II.     *Rooker-Feldman* Doctrine

There is generally no avenue for state court losers to challenge judgments in federal court. "[T]he *Rooker-Feldman* doctrine "precludes lower federal court jurisdiction over claims seeking review of state court judgments . . . [because] no matter how erroneous or unconstitutional the state court judgment may be, the Supreme Court of the United States is the only federal court that could have jurisdiction to review a state court judgment."  *Taylor v. Fannie Mae*, 374 F.3d 529, 532 (7th Cir. 2004) (citation omitted); *see also Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283-84 (2005).  The Supreme Court of the United States is the only federal court authorized to review judgments entered by state courts in civil litigation.  *Harold v. Steel*, 773 F.3d 884, 885 (7th Cir. 2014) (citation omitted).

### III.    Fed. R. Civ. P. 12(b)(6) & 9(b)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court may draw reasonable inferences from them. *Id*. When evaluating a motion to dismiss, "the Court must accept the well-pleaded factual allegations as true and draw reasonable inferences in the plaintiff's favor, but legal conclusions and conclusory statements are not entitled to any presumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell* 550 U.S. at 555-556.

A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" cannot survive a motion to dismiss. *Ashcroft*, 556 U.S. at 678. When alleging fraud, Fed. R. Civ. P. 9(b) requires the complaint to state the circumstances surrounding the fraud "with particularity," including "the identity of the person making the misrepresentation, the time, place, and content of the false statement, and the method by which it was communicated." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008).

### IV.    Fed. R. Civ. P. 12(f)

Under Fed. R. Civ. P. 12(f), the Court may strike from a pleading any "redundant, immaterial, impertinent, or scandalous matter." *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664-65 (7th Cir. 1992). Motions to strike are appropriate to prevent unnecessary clutter and prejudice and to narrow the issues for trial. *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989).

**ARGUMENTS**

**I.**     **This Court lacks subject matter jurisdiction, and therefore the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).**

First, this Court lacks subject-matter jurisdiction.  The supposed federal question rests on a defective RICO claim that fails to allege any enterprise, pattern of racketeering activity, or direct injury to PD Finance – an entity that did not exist when the alleged conduct occurred.  Nor does the Complaint allege any direct injury to Pamela Goode or a valid conspiracy to commit a RICO violation.  Therefore, jurisdiction under 28 U.S.C. § 1331 never attached, and the Court lacks subject-matter jurisdiction.  And absent a viable federal claim, this Court has no basis to exercise supplemental jurisdiction over the remaining state law causes of action.  Moreover, the Complaint constitutes an impermissible collateral attack on the Marion Circuit Court's final quiet title judgment in 2021, which *Rooker-Feldman* squarely forbids.

These jurisdictional defects apply with greater force to Jon and Tyler Rickey.  The Complaint alleges no personal conduct by either Rickey; no predicate act; no participation in an enterprise; no interaction with Pamela Goode; and no facts supporting individual liability.  Even if any federal claim could theoretically proceed against another Defendant, the Complaint alleges no federal cause of action involving Jon or Tyler Rickey, and thus no federal jurisdiction exists over them individually.  For all these reasons, the Complaint must be dismissed in its entirety under Rule 12(b)(1).

      **A.**      **No federal question jurisdiction exists because Plaintiff has alleged a defective RICO claim – Plaintiff does not plausibly allege that Jon or Tyler Rickey conducted an enterprise through a pattern of racketeering activity.**

No federal question jurisdiction[2] exists because Plaintiff has failed to allege a plausible federal RICO claim. A plaintiff must allege a valid federal cause of action on the face of the complaint for jurisdiction to attach under 28 U.S.C. § 1331. *Bell v. Hood*, 327 U.S. 678, 681-82 (1946) (Where a complaint is so insubstantial, implausible, or devoid of merit as not to involve a federal controversy within the jurisdiction of the district court, the suit may be dismissed for want of jurisdiction.). The Complaint cites Section 1962 (c) & (d), which states the following:

      (c)      It shall be unlawful for any person[3] employed by or associated with any enterprise[4] engaged in, or the activities of which affect, interstate or foreign commerce, to

---

[2]      It should be noted at the outset that Plaintiff has not claimed diversity jurisdiction in his Complaint, but rather bases his suit on federal question jurisdiction, citing the federal RICO statute at 18 U.S.C. § 1962. Congress allows federal courts jurisdiction over cases or controversies involving citizens of different states when the sum value of the controversy exceeds $75,000. 28 U.S.C. § 1332(a). It is peculiar that an attorney at an upstanding and reputable large law firm would sign for a complaint without having considered diversity jurisdiction. But, even if the Complaint claimed diversity, Plaintiff here lacks it. Plaintiff PD Finance, LLC was organized in Delaware on August 6, 2025. *See* Ex. A. The assignment of claims was made August 8, 2025, just two short days later. (Compl. Ex. 1 [ECF No. 1-1]). Arguably, it appears that Plaintiff may have tried to manufacture diversity to file this lawsuit in federal court since most, if not all, of the parties would have been residents, in one way or another, of the State of Indiana. Any attempt by Plaintiff to manufacture diversity would be improper. 28 U.S.C. § 1359; *see also e.g.*, *Prudential Oil Corp. v. Phillips Petroleum Co.*, 546 F.2d 469 (2nd Cir. 1976) (assigning claims to manufacture diversity jurisdiction is improper); *Nike, Inc. v. Comercial Iberica De Exclusivas Deportivas, S.A.*, 20 F.3d 987, 991 (9th Cir. 1994) (certain kinds of diversity-creating assignments warrant particularly close scrutiny); *Herzog Contracting Corp. v. McGowen Corp.*, 976 F.2d 1062, 1066 (7th Cir. 1992) (instructs courts to analyze the facts and determine whether an assignment was collusive "in the relevant sense of being motivated by the assignor's desire to obtain access to a federal court under the diversity jurisdiction.").

[3]      A *person* is defined as "any individual or entity capable of holding a legal or beneficial interest in property. 18 U.S.C. § 1961(3).

[4]      *Enterprise* is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

conduct or participate, directly or indirectly, in the conduct of such enterprise's affidavit through a pattern[5] of racketeering activity[6] or collection of unlawful debt.

(d)    It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962(c) & (d).  (Compl. ¶¶201-220).

"To allege a claim under § 1962(c), a plaintiff must allege that the defendant. . . (1) conducted (2) an enterprise (3) through a pattern (4) of racketeering activity."  *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001); *see also Sedima v. Imrex Co.*, 473 U.S. 479, 496-97 (1985).  Proof used to establish one of these elements might "coalesce," but "proof of one does not necessarily establish the other."  *United States v. Turkette*, 452 U.S. 576, 583 (1981).

Here, PD Finance alleges a federal RICO violation but does not viably plead any of the required elements: an enterprise, a pattern, predicate of racketeering activity; nor does it viably plead conspiracy or any injury to its own business or property.  These defects apply with full force to Jon and Tyler Rickey.  The Complaint identifies no predicate act committed by either Rickey, no participation by them in any alleged enterprise, and no conduct by them that could have injured PD Finance or its assignor.

Even if RICO allegations could proceed against another Defendant, the Complaint does not allege a federal claim against Jon or Tyler Rickey individually and thus provides no basis for federal jurisdiction over them.  Nor does the Complaint allege a viable conspiracy under 18 U.S.C.

---

[5]    *Pattern of racketeering activity* requires two acts of racketeering activity, one of which occurring after the effective date of this chapter and the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity. 18 U.S.C. § 1961(5).

[6]    *Racketeering activity* means "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance … which is chargeable under State law and punishable by imprisonment for more than one year," and includes "any act which is indictable under … section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1503 (relating to obstruction of justice), … sections 1956 and 1957 (relating to the laundering of monetary instruments)," among others. 18 U.S.C. § 1961(1).

§ 1962(d) with respect to Jon or Tyler.  Lastly, the Complaint pleads no injury to "business or property" by PD Finance because they did not exist when the alleged conduct occurred and could not have suffered any injury.  Nor does the Complaint identify any injury suffered by the assignor, Pamela Goode, that was caused by any predicate act committed by Jon or Tyler Rickey.  Without a cognizable RICO injury, federal jurisdiction is absent as a matter of law.

For these reasons, Plaintiff's RICO allegations cannot plausibly support federal-question jurisdiction, and the Complaint must be dismissed under Rule 12(b)(1).

### 1.    *Conducted an Enterprise.*

PD Finance fails to plead the existence of a RICO enterprise.  An "'enterprise' must have a purpose is apparent from the meaning of the term in ordinary usage, i.e., a 'venture,' 'undertaking,' or 'project,'" *Boyle v. United States*, 556 U.S. 938, 946 (2009), and is proved "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Turkette*, 452 U.S. at 583.  A RICO enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *Browning v. Flexsteel Indus.*, 955 F. Supp. 2d 900, 908 (N.D. Ind. 2013).

An "association-in-fact is 'a group of persons associated together for a common purpose of engaging in a course of conduct.'" *Id*. at 908-09 (quoting *Turkette*, 452 U.S. at 583).  An association-in-fact can be shown by evidence of "of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Id*.  In *Boyle*, the Supreme Court held that "an association-in-fact enterprise must also have some sort of 'structure,' consisting of 'at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's

purpose.'"  556 U.S. at 946.  An association-in-fact may need not be a business-like entity, but likely includes a "hierarchy," different roles, and a "chain of command."  *Id*. 947-48.

Here, PD Finance alleges only that the Defendants were acquiring, renovating, and "flip[ping]" real estate with people they knew.  (Compl. ¶ 32).  Acquiring homes, renovating them, and selling them does not necessarily mean you are an enterprise.  For example, if a homeowner contracts with a company to renovate his kitchen, that does not mean the homeowner and the renovation company are an "enterprise."  And just because the homeowner is an LLC would not change that analysis.  Merely buying homes and working with individuals to flip the houses does not constitute an enterprise because there must be some "continuing unit" functionality, which the complaint only shows circumstantially.  A "continuing unit" is shown by relationships, structure, and a common purpose – not a series of independent or circumstantial real-estate dealings.  Further, the conclusory statements of an "enterprise" within the complaint should not be considered by the Court.  (Compl. ¶¶ 24-40); *see also Ashcroft*, 556 U.S. at 678 ("legal conclusions and conclusory statements are not entitled to any presumption of truth.").

These defects are even more pronounced as to Jon and Tyler Rickey.  The Complaint does not allege any communication between either Rickey and Pamela Goode, any agreement between the Rickeys and any other Defendant, any shared purpose, or any organizational structure involving them or any deal with Pamela Goode.  PD Finance merely alleges that the Rickeys held ownership or management interest in LLCs involved in real estate transactions – facts that do not satisfy the enterprise requirement.  Nothing in the Complaint plausibly shows that Jon or Tyler were part of any "continuing unit" or association-in-fact enterprise.

Because PD Finance fails to allege a structured, continuing enterprise or any participation in such an enterprise by Jon or Tyler Rickey, the first essential element of RICO claim is not pled.

Without a plausible allegation, no RICO claim exists, and thus no federal question jurisdiction attaches under 28 U.S.C. § 1331.

    2.    *Through a Pattern.*

PD Finance has failed to show that a patten existed. "[T]o satisfy the pattern element, 'the alleged acts of wrongdoing must not only be related, but . . . must amount to or pose a threat of continued criminal activity.'" *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006) (citation omitted). As the statute states, two racketeering acts within ten years does not define a pattern per se, but rather a "plaintiff must show continued criminal activity (or the threat thereof) and relationship between the predicate acts--a standard commonly dubbed the 'continuity plus relationship' test." *Roger Whitmore's Auto. Servs. v. Lake Cty., Ill.*, 424 F.3d 659, 672 (7th Cir. 2005); *see also H.J. Inc. v. N.W. Bell Tel. Co.*, 492 U.S. 229, 237 (1989); *Gamboa*, 457 F.3d at 705-06. Factors used in the continuity analysis include "the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries." *Id*. at 709, n. 4 (citation omitted). "[I]solated instances of criminal behavior, not presenting at least some threat of future harm, cannot meet § 1962(c)'s continuity element." *Id*. at 706.

Here, PD Finance alleges no predicate acts at all by Jon or Tyler Rickey, and therefore no "pattern" involving either Defendant. PD Finance has an assignment only for the claim of Pamela Goode and the Lockburn Property, (Compl. Ex. 1 [ECF No. 1-1]), not the other properties mentioned – 4415 Kingsley Drive, 317 North Oxford Street, and 1801 Winfield Avenue. *See infra* (II)(A). Because PD Finance can only make claims related to the Lockburn property and that one transaction is not enough to show any sort of pattern of activity. *Id*. Nor does Plaintiff make any claims of the potential continued criminal activity, or threat thereof. A single instance of alleged

conduct with an alleged single victim does not meet the pattern and continuity requirement of § 1962.

The pattern requirement also fails because the Complaint relies on impermissible group pleading. *See Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) ("Each defendant is entitled to know what he or she did that is asserted to be wrongful. A complaint based on a theory of collective responsibility must be dismissed.").  It does not allege any specific facts, dates, communications, or conduct attributable to Jon or Tyler individually.

Therefore, Plaintiff has failed to show there was continuity, relatedness, or any predicate acts involving Jon or Tyler Rickey, the Complaint does not plead a pattern of activity, and the second element of RICO fails.  Without a pattern, no RICO claim exists, and therefore no federal-question jurisdiction attaches under 28 U.S.C. § 1331.

### 3.    *Racketeering Activity.*

Plaintiff has not shown that any racketeering activity occurred in relation to the Lockburn Property by Jon or Tyler Rickey.  "Racketeering activity" is defined exhaustively in 18 U.S.C. § 1961(1), which enumerates specific federal crimes—such as mail fraud, wire fraud, identity fraud, bribery, and extortion – that may serve as predicate acts under RICO.  The Complaint does not identify a single plausible qualifying predicate act committed by either Rickey.  *See* (Compl. ¶¶ 201–220).  Instead, the Complaint asserts that "members of the Fall Enterprise have engaged in a series of related predicate acts, including mail and wire fraud, identity fraud, bribery, and laundering of criminal proceeds."  (Compl. ¶ 202).  But these allegations are entirely conclusory and unsupported by any factual detail.  The Complaint contains no facts showing that Jon or Tyler Rickey personally engaged in mail fraud, wire fraud, identity fraud, bribery, money laundering, or

any other act listed in § 1961(1).  As such, these assertions cannot satisfy RICO's predicate-act requirement.

Moreover, where a RICO predicate is based on fraud, Rule 9(b) requires Plaintiff to plead the "who, what, when, where, and how" of the alleged fraudulent act.  The Complaint does not allege any specific communication, misrepresentation, transaction, or involvement by Jon or Tyler Rickey relating to the Lockburn Property.  No dates, no statements, no victims, and no methods of execution are identified.  The allegations under Count V merely repeat labels such as "fraud" or "predicate acts" without supplying the facts necessary to meet Rule 9(b)'s heightened standard. *See* (Compl. ¶¶ 202–219).

Because Plaintiff fails to allege any predicate act—much less two acts—committed by Jon or Tyler Rickey, it has not pled the racketeering activity required under § 1962(c).  Without predicate acts, the final element of a RICO claim is absent, and Count V necessarily fails.  And because a valid federal RICO claim is the sole asserted basis for federal jurisdiction, Plaintiff's failure to plead racketeering activity defeats federal-question jurisdiction under 28 U.S.C. § 1331.

4.    *1962(d) Conspiracy*

PD Finance also alleges that Defendants, including Jon and Tyler Rickey, violated 18 U.S.C. § 1962(d) by claiming that there was a conspiracy to commit a RICO violation.  A conspiracy is "an agreement to commit some other offense." *United States v. Foston*, 108 F.4th 934, 936 (7th Cir. 1986).  "To be convicted of a conspiracy to violate RICO there must be proof that the individual, by his words or actions, objectively manifested an agreement to participate, directly or indirectly, in the affairs of an enterprise, through the commission of two or more predicate crimes." *United States v. Neapolitan*, 791 F.2d 489, 497 (7th Cir. 1986) (citation omitted); *see also United States v. Farmer*, 38 F.4th 591, 602 (7th Cir. 2022) (to prove a RICO

conspiracy, "the government must show(1) an agreement to conduct or participate in the affairs (2) of an enterprise (3) through a pattern of racketeering activity."). "One must knowingly agree to perform services of a kind which facilitate the activities of those who are operating the enterprise in an illegal manner. It is an agreement, not to operate or manage the enterprise, but personally to facilitate the activities of those who do." *Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961, 967 (7th Cir. 2000).

Here, PD Finance alleges no facts showing that Jon or Tyler Rickey – nor any other Defendant – knowingly agreed to participate in a RICO enterprise or to facilitate racketeering activity relating to the Lockburn Property. The Complaint identifies no communication, meeting, agreement, plan, or coordinated action involving either Rickey or any defendant. Instead, it relies solely on conclusory assertions that "Defendants conspired" without identifying what Jon or Tyler, or really what any Defendant, allegedly agreed to do. (Compl. ¶ 216).

Moreover, a § 1962(d) conspiracy claim cannot stand where the Complaint fails to plead a substantive RICO violation under § 1962(c). *See supra* (I)(A)(i)-(iii). Because PD Finance has not pled an enterprise, a pattern, or any predicate acts involving the Lockburn Property, there is no underlying RICO offense to conspire to commit. Without a viable violation, the conspiracy claim fails as a matter of law. Accordingly, Plaintiff's § 1962(d) conspiracy claim fails and cannot provide a basis for federal-question jurisdiction.

> 5. *There was no injury to PD Finance's business or property.*

Any person injured "in his business or property" through a violation of 18 U.S.C. § 1962 may sue for three times the damages and reasonable attorney's fees. 18 U.S.C. § 1964(c). The Supreme Court has interpreted § 1964(c)'s "'by reason of' language . . . to signify not only 'but for' causation but also proximate causation.'" *Ratfield v. United States Drug Testing Labs., Inc.*,

140 F.4th 849, 852 (7th Cir. 2025) (*Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010) (plurality opinion)).   RICO "incorporate[s] common-law principles of proximate causation," including a "demand for some direct relation between the injury asserted and the injurious conduct alleged." *Id*.   Foreseeability is not enough.   *Med. Marijuana, Inc. v. Horn*, 145 S. Ct. 931, 945 (2025) (citation omitted).

Plaintiff cannot satisfy this requirement.   As stated above, there was no enterprise, no pattern, and no racketeering activity relating to the Lockburn Property.   *See supra* § (I)(A)(i)-(iii).   Because no RICO violation occurred, Plaintiff cannot plausibly allege that any RICO predicate was the but-for or proximate cause of any injury.   Nor does the Complaint identify any injury to Pamela Goode – the assignor – that was directly caused by any conduct of Jon or Tyler Rickey, as required under § 1964(c).   Further, PD Finance did not exist when the alleged conduct occurred and therefore could not have suffered injury to its own business or property.   Because no injury is attributable to Jon or Tyler Rickey, it is fatal to Plaintiff's RICO claim.

Ultimately, Plaintiff's claim of federal question jurisdiction fails because the statute used to obtain jurisdiction does not apply in any way to the events at the Lockburn Property.   No valid RICO claim has been properly alleged, and the Court lacks subject matter jurisdiction.   Because the Court lacks subject matter jurisdiction, it should also decline to exercise supplemental jurisdiction over state-law claims under 28 U.S.C. § 1367.   Therefore, the case should be dismissed.

**B.      This action is barred by the *Rooker-Feldman* doctrine because it is a collateral attack on a final, Indiana state court judgment.**

Plaintiff's Complaint should be dismissed because the *Rooker-Feldman* doctrine precludes attacks on a final, state court judgements.   There is generally no avenue for state-court losers to challenge judgments in federal court.   "[T]he *Rooker-Feldman* doctrine 'precludes lower federal

court jurisdiction over claims seeking review of state court judgments . . . [because] no matter how erroneous or unconstitutional the state court judgment may be, the Supreme Court of the United States is the only federal court that could have jurisdiction to review a state court judgment.'" *Taylor*, 374 F.3d at 532 (citation omitted); *see also Exxon Mobile Corp.*, 544 U.S. at 283-84; *Harold*, 773 F.3d at 885 (citation omitted).

Here, Plaintiff's only valid claim with standing involves the Lockburn Property. However, the Complaint appears to be challenging a state court judgement that quieted title to LWIG, Cause No. 49C01-2012-PL-044323, entered August 6, 2021. (Compl. Ex. 7 [ECF No. 1-7]). The proper forum to challenge a state court judgment would be the forum in which the judgment was handed down – the Marion County Circuit Court or the Supreme Court of the United States. Not the Federal District Court for the Southern District of Indiana. Plaintiff sought to bring this action to federal court under RICO, which has been shown to have been defective and not properly pled. *See supra* (I)(A)(i)-(v).

In sum, Plaintiff's fraud and RICO claims depend on invalidating that judgment as fraudulently obtained, which this Court cannot do. Because this case is merely an attack on a state court judgment, there is no subject matter jurisdiction, and the case should be dismissed.

**II.    Even if this Court finds subject matter jurisdiction, the Complaint should be dismissed for failing to state any plausible claim.**

Even if this Court were to conclude that subject-matter jurisdiction exists – which it does not – Plaintiff's claims must still be dismissed because the Complaint fails to state a claim upon which relief can be granted. To dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *Ashcroft*, 556 U.S. at 678; *Bell*, 550 U.S. at 570. A complaint that merely recites legal conclusions, labels

defendants collectively, or offers speculative asserts does not meet this standard. *Id*.; *Bank of Am., N.A.*, 725 F.3d at 818.

Plaintiff's allegations against Jon and Tyler Rickey are precisely the sort of conclusory and undifferentiated assertions that *Bell* and *Ashcroft* reject. The Complaint does not attribute a single wrongful act, misrepresentation, communication, or transaction to either Rickey personally. Instead, it relies on group pleading and attempts to attach personal liability based solely on their ownership or management roles in certain LLCs – positions that do not create individual liability under Indiana law. Because the Complaint fails to allege specific, plausible facts establishing wrongdoing by either Jon or Tyler Rickey, all claims against them must be dismissed under Rule 12(b)(6).

### A.     Plaintiff's assignment limits standing to only the Lockburn Property.

PD Finance's assignment references only the Lockburn Property. "[A]n assignee can sue based on his assignor's injuries. *Sprint Communs. Co., L.P. v. APCC Servs.*, 554 U.S. 269, 286 (2008). The "assignee of a claim has standing to assert the injury in fact suffered by the assignor." *Id*. In order to have standing, a plaintiff must have an "injury in fact -- an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) 'actual or imminent, not "conjectural" or "hypothetical."'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court.'" *Id*. (citation omitted). "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id*. (citation omitted).

PD Finance received an assignment of claims from Pamela Goode and the Lockburn Property, which allows PD Finance to assert an injury in fact and have standing based on that property, but nothing more. (Compl. Ex. 1 [ECF No. 1-1]). The remaining properties - 4415 Kingsley Drive; 317 North Oxford Street; and 1801 Winfield Avenue, which plaintiff devotes more than thirty (30) pages to with exhibits, do not matter. All factual allegations and exhibits relating to those properties are legally irrelevant to any claim PD Finance owns. PD Finance has no legal standing to make any claims based on the other listed properties. Therefore, no harm could have befallen PD Finance in relation to the other properties. The only claim PD Finance could make would be in relation to the Lockburn Property. Therefore, PD Finance LLC has no standing for the remaining properties and only has standing under the Lockburn Property.

**B.      There is no basis in the Complaint to support personal liability on the part of Jon or Tyler Rickey due to their relationship with the LLCs, and the corporate veil should not be pierced.**

Jon and Tyler Rickey are listed personally as Defendants in this case. However, there are no allegations that plausibly state that Jon or Tyler Rickey are personally liable for any of the alleged conduct.

Ind. Code § 23-18-3-3(a) specifically states that "[a] member, manager, an agent, or an employee of a limited liability company is not personally liable for the debts, obligations, or liabilities of the limited liability company, whether arising in contract, tort, or otherwise, or for the acts or omissions of any other member, manager, agent, or employee of the limited liability company." "While an Indiana court will impose personal liability to protect innocent third parties from fraud or injustice, the burden is on the party seeking to pierce the corporate veil to prove that the corporate form was so ignored, controlled or manipulated that it was merely the instrumentality of another and that the misuse of the corporate form would constitute a fraud or promote injustice."

*Aronson v. Price*, 644 N.E. 2d 864, 867 (Ind. 1994); *see also Ziese & Sons Excavating, Inc. v. Boyer Constr. Corp.*, 965 N.E.2d 713, 720 (Ind. Ct. App. 2012).

Indiana courts consider whether the plaintiff has shown: "(1) undercapitalization; (2) absence of corporate records; (3) fraudulent representation by corporation shareholders or directors; (4) use of the corporation to promote fraud, injustice or illegal activities; (5) payment by the corporation of individual obligations; (6) commingling of assets and affairs; (7) failure to observe required corporate formalities; or (8) other shareholder acts or conduct ignoring, controlling, or manipulating the corporate form." *Id*.

The Complaint merely alleges that Jon and Tyler Rickey both "ha[ve] an ownership interest in, manage[], and act[] as an agent for the following: 337 Congress LLC, Logan Wignell Investment Group, LLC . . .." (Compl. ¶ 8-9). These are ordinary characteristics of LLC membership and management, not allegations of fraud, domination, misuse, or disregard for corporate separateness.

Nowhere in the Complaint does Plaintiff allege, with particularity, that the corporate veil should be pierced to hold Jon and Tyler Rickey personally liable for comingling assets, misuse of funds, undercapitalization, manipulation of the corporate form, domination or control, or any personal involvement by Jon or Tyler in the alleged misconduct relating to the Lockburn Property. Nor does Plaintiff plead veil-piercing "with particularity" or identify any factual basis to disregard the LLC structure. Simply alleging that the Rickeys "own or manage" certain LLCs does not state a personal claim against them and does not overcome the statutory protections of Ind. Code § 23-18-3-3(a).

Because no allegations plausibly demonstrate that the corporate veil should be pierced, and because Indiana law expressly shields LLC members and managers from personal liability, Jon

Page 20 of 29

and Tyler Rickey cannot be held personally liable for the alleged acts or obligations of any LLC. All claims against them in their individual capacities should therefore be dismissed.

### C.      The remaining state law claims should be dismissed because they are defective and fail as a matter of law.

The remainder of Plaintiff's claims arise solely under Indiana law and fail to state any plausible basis for relief.  Each count relies on criminal statutes that provide no private right of action, conclusory allegations of fraud unsupported by particular facts, or statutes that are inapplicable to the alleged conduct.  Even accepting the Complaint's allegations as true, the asserted state-law theories are legally deficient and should be dismissed as a matter of law.

#### 1.      *Fraud and Pecuniary Loss.*

Fed. R. Civ. P. 9(b) requires a plaintiff to state "with particularity" any "circumstances constituting fraud."  "Although states of mind may be pleaded generally, the 'circumstances' must be pleaded in detail" meaning the "who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).  "The circumstances of fraud or mistake include 'the identity of the person who made the representation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.,* 536 F.3d 663, 668 (7th Cir. 2008).

No valid fraud claim exists as to the Lockburn Property.  Plaintiff claims that "Pamela Goode called Joe Fall, who told her that the Lockburn Property had been sold but that the paperwork was not done correctly and needed to be fixed."  (Compl. ¶ 64).  It then alleges that "Joe Fall convinced Pamela Goode to meet with him" and that during that meeting "Pamela Goode executed a quitclaim deed conveying her interest to Good Timber LLC."  (Compl. ¶ 66).  Then Joe Fall "paid Pamela Goode $7,000 for her interest in the Lockburn property."  (Compl. ¶ 67).  Later,

the Complaint alleges that Joe Fall falsely stated the property had been sold on or about April 29, 2024, and that he made a false impression that the property was beyond her reach, even though the Complaint states she had a 50% interest in the property. (Compl. ¶ 171-179).

But those statements could not have been false because the Marion County Circuit Court quieted title to the Lockburn Property on August 6, 2021. (Compl. Ex. 7 [ECF No. 1-7]). Further, there is nothing in the Complaint to suggest that Jon and Tyler Rickey personally committed any sort of fraud. Because of this, the allegation of fraud against them fails, and the Court should dismiss the Complaint.

### 2. Constructive Fraud and Fraudulent Concealment.

Without belaboring the point, fraud must be plead with particularity. Fed. R. Civ. P. 9(b); see also supra (II)(C)(i). "To satisfy this heightened pleading requirement in a constructive fraud claim under Indiana law, a plaintiff must allege: (1) the defendant had knowledge that was not in the plaintiff's possession and (2) the defendant improperly abused the plaintiff's confidence to obtain an unconscionable advantage." Browning v. Trans Union LLC, 2025 U.S. Dist. LEXIS 28181, at *17 (S.D. Ind. Feb. 18, 2025) (citing MDG Int'l Inc. v. Australian Gold, Inc., 2008 U.S. Dist. LEXIS 65450 (S.D. Ind. Aug. 22, 2008). Such allegations must be set out in the complaint itself. Id. (citation omitted).

This allegation fails against Jon and Tyler Rickey because the Complaint does not allege that they had personal knowledge about the Lockburn Property and used it against Pamela Goode or PD Finance to obtain an unconscionable advantage. (Compl. ¶ 180-189). The Complaint instead says that the "Defendants" had the knowledge and used it against Pamela Goode to obtain her property – which is not sufficient for the heightened pleading standard of constructive fraud

Page 22 of 29

and constitutes impermissible group pleading. *See Bank of Am., N.A.*, 725 F.3d at 818. Therefore, this allegation fails as a matter of law and should be dismissed.

   3.  *Conversion, Theft, and Pecuniary Loss.*

  Indiana law allows plaintiffs to bring civil conversion claims under its criminal conversion statute. *See* Ind. Code § 34-24-2-1 ("If a person . . . suffers a pecuniary loss as a result of a violation of IC 35-43 . . . the person may bring a civil action against the person who caused the loss. . ."). To prevail on a civil conversion claim, a Plaintiff "must prove the elements of the criminal conversion claim by a preponderance of the evidence." *IP of a W. 86th St. 1, LLC v. Morgan Stanley Mortg. Capital Holdings, LLC*, 686 F.3d 361, 370 (7th Cir. 2012); *see also SJS Refractor Co., LLC v. Empire Refractory Sales, Inc.,* 952 N.E.2d 758, 766 (Ind. Ct. App. 2011). In particular, the plaintiff must "prove that [the defendant(s)] knowingly or intentionally exerted unauthorized control over their property, and that they suffered pecuniary loss as a result of this unauthorized control." *Id*.

  Plaintiff here does not "prove the elements of [] criminal conversion . . . by a preponderance of the evidence." The Complaint does not allege or show that Jon or Tyler Rickey exerted unauthorized control over property, participated in the quitclaim deed transaction, communicated with Pamela Goode, or filed or recorded any document concerning the Lockburn Property. Nothing in the Complaint ties either Rickey to the alleged conversion or suggests they knowingly or intentionally exerted control over Goode's property interest. Absent any allegation that Jon or Tyler Rickey personally engaged in criminal conversion, the civil conversion claim fails as a matter of law and should be dismissed.

4.      *Criminal Gang Control and Pecuniary Loss.*

Indiana law allows plaintiffs to bring civil criminal gang control claims under its criminal gang control statute.  *See* Ind. Code § 34-24-3-1 ("If a person . . . suffers a pecuniary loss as a result of a violation of . . . IC 35-45-9 . . . the person may bring a civil action against the person who caused the loss.").  The victim must prove by a preponderance of the evidence all elements of the alleged crime, including the requisite criminal intent.  *Gordon v. Bank of New York Mellon Corp.*, 964 F. Supp. 2d 937, 943 (N.D. Ind. 2013).  Per Ind. Code § 35-45-9-3, in order to prove "participation in a criminal organization," plaintiff must plead that a defendant "knowingly or intentionally commits an offense: (1) with the intent to benefit, promote, or further the interests of a criminal organization; or (2) for the purpose of increasing the person's own standing or position within a criminal organization. . .."

PD Finance pleads none of this.  The Complaint instead contains only conclusory assertions that the "Defendants" engaged in criminal organization activity.  (Compl. ¶¶ 197-200).  It does not allege any facts that Jon or Tyler Rickey belonged to a criminal organization, acted with the intent to benefit or promote that organization, sought to increase their standing in the organization, or committed some other offense.  Nor does the Complaint allege any conduct by either Rickey relating to the Lockburn Property that could plausibly constitute "criminal organization activity."  Instead, Plaintiff relies entirely on impermissible broad group allegations that fail to identify any specific actions taken by Jon or Tyler.  *See Bank of Am., N.A.*, 725 F.3d at 818.

Because PD Finance has not pled the statutory elements of Ind. Code § 35-45-9-3 and alleges no facts supporting intentional participation in a criminal organization, its civil gang control claim fails as a matter of law and should be dismissed.

5.      *Indiana RICO.*

Complaint ¶ 221-229 claims a civil remedy for Plaintiff for an alleged violation of Indiana's

RICO statute, which states:

A person:

(1) who has knowingly or intentionally received any proceeds directly or indirectly derived from a pattern of racketeering activity, and who uses or invests those proceeds or the proceeds derived from them to acquire an interest in property or to establish or to operate an enterprise;

(2) who through a pattern of racketeering activity, knowingly or intentionally acquires or maintains, either directly or indirectly, an interest in or control of property or an enterprise; or

(3) who is employed by or associated with an enterprise, and who knowingly or intentionally conducts or otherwise participates in the activities of that enterprise through a pattern of racketeering activity;

commits corrupt business influence. . ..

Ind. Code § 35-45-6-2.

Indiana law defines a "pattern of racketeering activity" as "engaging in at least two (2) incidents of racketeering activity . . .."  Ind. Code § 35-45-6-1(d); *Pringle v. Garcia*, 2014 U.S. Dist. LEXIS 56916, at *14-15 (N.D. Ind. Apr. 23, 2014) (Plaintiff has only alleged Defendant engaged in one incident of racketeering activity, so the state law claim must also be dismissed.); *see also Waldon v. Indiana*, 829 N.E.2d 168, 177 (Ind. Ct. App. 2005) (a pattern of racketeering activity requires at least two predicate acts).  Under Ind. Code § 34-24-2-6(a), an aggrieved person may bring an action alleging a violation of Ind. Code § 35-45-6-2 and can obtain three (3) times actual damages, the cost of the action, reasonable attorney's fees, and punitive damages awarded by the court and allowable under law if they show, by a preponderance of the evidence, that they have been damaged by a corrupt business influence.  Ind. Code § 34-24-2-6(b).

Just like the allegation of a violation of the federal RICO statute, *supra* (I)(A)(i)-(v), PD Finance has not alleged a valid Indiana RICO claim.  There has been no showing of an enterprise, any predicate acts by Jon or Tyler Rickey, two acts constituting a pattern of racketeering activity, or any conduct by either Rickey involving racketeering activity.  Instead, there are mere conclusory statements that "Defendants" collectively engaged in racketeering activity, which the Court should not give deference to.  *Ashcroft*, 556 U.S. at 678-79; *Bell* 550 U.S. at 555-556.  Indiana's RICO statute mirrors the federal RICO statute.  Therefore, the deficiencies that foreclose a federal RICO claim, *see supra* I(A)(i)-(v), equally foreclose an Indiana RICO claim.  Without a viable federal RICO theory, there can also be no viable state RICO theory.  Because Plaintiff has not alleged a sufficient Indiana RICO claim, it must be dismissed as a matter of law.

6. *Indiana Home Loan Practices Act.*

Plaintiff's Complaint ¶¶ 230-240 alleges that Defendants violated the Indiana Home Loan Practices Act ("HLPA").  *See e.g.*, Ind. Code § 24-9.  PD Finance relies on Ind. Code § 24-9-2-7(a), the definition of "deceptive act" which reads:

> (1) an act or a practice as part of a mortgage transaction (as defined in IC 24-9-3-7(a)), or of *a real estate transaction (as defined in IC 24-9-3-7(b))*, in which a person at the time of the transaction knowingly or intentionally:
> (A) makes a material misrepresentation; or
> (B) conceals material information regarding the terms or conditions of the transaction; or

Ind. Code § 24-9-2-7(a) (emphasis added).

Plaintiff also cites Ind. Code § 24-9-3-7(c)(5) and (c)(3), which states:

> (c) A person may not do any of the following:
> (3) Engage in a deceptive act in connection with a mortgage transaction or a real estate transaction.
> (5) With respect to a real estate transaction or a mortgage transaction, represent that:
> (A) the transaction has:
> (i) certain terms or conditions; or
> (ii) the sponsorship or approval of a particular person or entity;

> that it does not have and that the person knows or reasonably should know it does not have; or
>
> (B) the real estate or property that is the subject of the transaction has any improvements, appurtenances, uses, characteristics, or associated benefits that it does not have and that the person knows or reasonably should know it does not have.

Ind. Code § 24-9-3-7(c)(3) and (c)(5).

For purposes of Ind. Code § 24-9-3-7, "real estate transaction" is defined as "the sale or lease of any legal or equitable interest in real estate: (1) that is located in Indiana; (2) upon which there is constructed or intended to be constructed a dwelling; and (3) that is classified as residential for property tax purposes."  Ind. Code § 24-9-3-7(b).

Here, Plaintiff's HLPA allegations concern only Joe Fall.  PD Finance alleges that Joe Fall engaged in deceptive acts by telling Pamela Goode that the Lockburn Property had been sold, failed to mention the quiet-title action, and convinced her to sign a quitclaim deed conveying her alleged interest to Good Timber LLC.  (Compl. ¶¶ 232-235).  PD Finance further alleges that Joe Fall misrepresented the value of the property and used deceptive tactics to induce her signature.  (Compl. ¶¶ 236-238).  None of these actions involve Jon or Tyler Rickey.  The Complaint does not allege that either Rickey communicated with Pamela Goode, made any misrepresentation, participated in the April 29, 2024 transaction, or concealed any information regarding the terms or conditions of that transaction.

Additionally, the HLPA allegations against Joe Fall are themselves conclusory and lack the particularity required under *Ashcroft*, *Bell*, or Fed. R. Civ. Pro. 9(b).  556 U.S. 662, 678-79 (2009); 550 U.S. at 555-556.  PD Finance does not plead the specific statements, dates, communications, or circumstances constituting a deceptive act with the detail required for any fraud-based claim. Because the Complaint alleges no HLPA-qualifying conduct by Jon or Tyler Rickey, and because

the allegations against the remaining Defendants fail to meet federal pleading standards, Plaintiff's

HLPA claim must be dismissed as a matter of law.

### III. If the Court does not dismiss the action, it should strike the immaterial and scandalous allegations surrounding the other properties besides the Lockburn Property.

Finally, the Court should strike the immaterial, prejudicial, and scandalous allegations

concerning properties at 4415 Kingsley Drive, 317 N. Oxford Street, and 1801 Winfield Avenue.

Fed. R. Civ. P. 12(f) allows courts to "strike from a pleading any redundant, immaterial,

impertinent, or scandalous matter." The thirty (30) plus pages devoted to other properties for

which PD Finance has no standing to make legal claims is immaterial to the Lockburn Property

and are highly prejudicial. *See supra* (II)(A). Their inclusion serves to only depict Defendants as

serial offenders and improperly expand the case beyond PD Finance's assigned rights.

Striking those allegations will narrow discovery and preserve judicial economy, should

discovery be necessary. Ultimately, the narratives of the other unrelated properties bear no

connection to PD Finance's limited assignment and serve only to cause scandal. Therefore, the

Court, in the alternative or addition to dismissal, strike the allegations and exhibits concerning

properties other than the Lockburn Property.

### CONCLUSION

For all these reasons, the Complaint should be dismissed with prejudice under Rules

12(b)(1) and 12(b)(6), or in the alternative/addition to dismissal, strike the extraneous and

scandalous allegations under Rule 12(f).

Respectfully submitted,

_____
Joshua J. David (IN #38171-49)
Christopher P. Jeter (IN #25905-49)
MASSILLAMANY JETER & CARSON LLP
14 Municipal Drive, Suite 300
Fishers, Indiana 46038
Telephone: (317) 576-8580
Facsimile: (317) 203-1012
Email:  joshua@mjcattorneys.com
            chris@mjcattorneys.com


*Attorneys for Defendants Jon Rickey & Tyler Rickey*

## CERTIFICATE OF SERVICE

I hereby certify that on November 24, 2025, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which will send notice to all counsel of record.

_____
Joshua J. David
Christopher P. Jeter