UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

PD FINANCE, LLC,                    )
                                    )
                                    )        Case No. 1:25-cv-01603-JPH-TAB
                    *Plaintiff*,    )
                                    )
      *vs*.                         )
                                    )
JOE D. FALL, III, *et al.*,         )
                                    )
                    *Defendants*.   )

**PD FINANCE LLC'S BRIEF IN RESPONSE TO MOTION TO DISMISS**

Plaintiff, PD FINANCE, LLC, by counsel, respectfully submits it brief in response to the

Motion to Dismiss filed by Jon Rickey and Tyler Rickey.

**I.       Legal standard under Rule 12(b)(6).**

"To survive a motion to dismiss, a complaint must provide a short and plain statement of

the claim showing that the pleader is entitled to relief, which is sufficient to provide the

defendant with fair notice of the claim and its basis." *DeGuelle v. Camilli*, 664 F.3d 192, 198

(7th Cir. 2011) (internal quotation omitted). A complaint is sufficient when it contains "either

direct or inferential allegations respecting all the material elements necessary to sustain recovery

under some viable legal theory." *Perry v. Noll*, 2017 WL 358643, at \*1 (S.D. Ind. Jan. 24, 2017)

(internal quotation omitted) (citing *Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955, 1969 (2007)).

"In construing the complaint, we accept all of the well-pleaded facts as true and draw all reasonable

inferences in favor of the plaintiff." *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896

F.3d 834, 839 (7th Cir. 2018) (internal quotation omitted). A motion to dismiss under Rule

1

12(b)(6) "doesn't permit piecemeal dismissals of *parts* of claims…." *BBL, Inc. v. City of Angola,* 809 F.3d 317, 325, 2015 WL 8021983 (7th Cir. 2015) (emphasis in original).

## II.    This Court has subject matter jurisdiction.[1]

### A.  Plaintiff has standing.

In this action, Plaintiff seeks only those damages arising out of the Lockburn Property, derived from Assignment of Rights and Claims made by Pamela Goode.[2] (ECF No. 1-1). Plaintiff includes allegations pertaining to other properties to show the existence of a criminal enterprise that has perpetrated and threatens to perpetrate a fraudulent scheme against numerous victims.

### B.  The *Rooker-Feldman* doctrine does not apply.

The first required element for application of the *Rooker-Feldman* doctrine is that "the federal plaintiff must have been a state-court loser." *Gilbank v. Wood Cnty. Dep't of Hum. Servs.,* 111 F.4th 754, 766 (7th Cir. 2024), *cert. denied,* 145 S. Ct. 1167, 221 L. Ed. 2d 250 (2025). The *Rooker-Feldman* doctrine is inapplicable because neither Plaintiff nor Plaintiff's assignee were state court losers—neither were parties to the state court quiet title action. (ECF No. 1 at 11).

Further, "if a plaintiff contends that out-of-court events have caused injury that the state judiciary failed to detect and repair, then a district court has jurisdiction—but only to the extent of dealing with that injury." *Iqbal v. Patel,* 780 F.3d 728, 730 (7th Cir. 2015). Plaintiff's contention in this action is that out-of-court racketeering activities have caused injury, which was neither detected nor repaired by the state court. Thus, this Court has subject matter jurisdiction.

---

[1] The free legal advice on diversity jurisdiction offered by the Rickeys was worth every penny.
[2] PD Finance, LLC makes no waiver of any rights, remedies or claims it has acquired or may acquire from victims of the Fall Enterprise's activity concerning any property, whether referenced in this Complaint or not.

*See id*.; *see also Top Metal Buyers Inc. v. Lopinot*, 2025 WL 2780046, at \*6 (S.D. Ill. Sept. 30, 2025) (holding that *Rooker-Feldman* doctrine is not applicable where "Plaintiffs' request for compensation owed does not require this Court to review and reject any state-court judgments.").[3]

### C.  Plaintiff's federal RICO allegations withstand the Rule 12(b)(1) standard.

The Rickeys invoke the jurisdictional test of substantiality by arguing that "Plaintiff's RICO allegations cannot plausibly support federal-question jurisdiction, and the Complaint must be dismissed under Rule 12(b)(1)." (ECF No. 27 at 17).[4] A dismissal for lack of substantiality imposes an exceptionally high bar on the movant, and the Rickeys do not clear that bar here.

> "Through its choice of language, ... the Court has ... made clear that only the most extreme cases will fail the jurisdictional test of substantiality." *LaSalle Nat'l Trust, N.A. v. ECM Motor Co.*, 76 F.3d 140, 143 (7th Cir. 1996). "A claim must be 'wholly insubstantial,' or 'obviously frivolous,' 'plainly unsubstantial,' or 'no longer open to discussion,' to merit dismissal under the substantiality doctrine." *Gammon*, 27 F.3d at 1256 (citing *Hagans*, 415 U.S. at 537, 94 S.Ct. 1372). … "A claim is insubstantial only if 'its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy.'"

*Sabrina Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 587 (7th Cir. 2017).

The following discussion of the elements shows that Plaintiff's federal RICO claim is both substantial and properly pleaded.

---

[3] Plaintiff's alternative request to rescind a deed executed in 2024 likewise does not require this Court to review and reject a quiet title judgment entered in 2021. (ECF No. 1 at 11, 41).
[4] The Rickeys cite no authority for the concept that Rule 12(b)(1) permits the Court to analyze "federal jurisdiction" separately against each defendant. (ECF No. 27 at 14).

25282106.v3

III.     **The facts alleged and reasonable inferences support claims against Jon and Tyler Rickey for violation of 18 U.S.C. § 1962(c) (RICO).**

A. **The Complaint alleges that Jon and Tyler Rickey are members of an enterprise with a common purpose of fraudulently taking title to property.**

The Rickeys argue that Plaintiff has not shown a criminal enterprise because the Complaint alleges "only" that Defendants were working together to acquire, renovate and sell homes. (ECF No. 27 at 18). First, this argument ignores the well-settled standard of construing the allegations and all reasonable inferences drawn therefrom in Plaintiff's favor. *See Berkowitz*, 896 F.3d at 839. Second, it ignores entirely the allegation that Defendants share a common purpose of fraudulently acquiring title to real estate. (ECF No. 1 at 5).

Sufficiently pleading a RICO enterprise is not an overly formulaic exercise:

> RICO reaches "a group of persons associated together for a common purpose of engaging in a course of conduct." … Such an enterprise, we said, "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit."

*Boyle v. United States*, 556 U.S. 938, 944–45 (2009).

The Complaint alleges that Defendants, which includes both Jon Rickey and Tyler Rickey, are part of "a group of persons associated together for a common purpose of engaging in a course of conduct designed to steal real property or otherwise acquire title of property that rightfully belongs to someone else by defrauding rightful property owners" (ECF No. 1 at 5) (the "Fall Enterprise"). The Fall Enterprise's core scheme begins with identifying valuable residential properties of deceased owners, then deploying a fake heir, acquiring title through non-arm's-length transfers, and using quiet title actions and subsequent intra-group conveyances to legitimize and launder title before monetizing the properties. (ECF No. 1 at 5–7). The Fall Enterprise ultimately profits by renovating and renting or selling the properties, "enjoying the gain on a property it acquired for nothing (or for a modest amount)" (ECF No. 1 at 7).

4

25282106.v3

The Fall Enterprise consists of a core group that includes Jon and Tyler Rickey, along with single-purpose entities such as 337 Congress LLC, Logan Wignell Investment Group LLC ("LWIG LLC"), Good Timber LLC, and 4415 Kingsley Trust, which are "formed and operated by the core group to help conceal the identity of the core group and in hopes of providing a shield from liability." (ECF No. 1 at 7–8). The Fall Enterprise uses 2210 E Southport Road in Indianapolis ("Southport Property") as a physical hub "for conducting business and furthering the purposes of the Fall Enterprise." (ECF No. 1 at 5).

The Fall Enterprise engages in advance planning and coordination to identify targets, enlist a fake heir, prepare and file a quiet title actions, and convey the stolen property to one another. (ECF No. 1 at 6-7). Different roles among the Fall Enterprise members are necessary to avoid detection of the scheme. (ECF No. 1 at 8). *See Boyle*, 556 U.S. at 948 ("Members of the group need not have fixed roles; different members may perform different roles at different times.").[5]  The core group of Fall Enterprise members, including Jon and Tyler Rickey, "share access to the funds resulting from the sale or lease of illicitly-gained property, with those funds being used to improve other illicitly-gained property to make them more valuable for sale or lease." (ECF No. 1 at 8).

To argue that the Complaint fails to allege an enterprise is to cast aside several pages of the Complaint. The allegations and reasonable inferences to be drawn therefrom handily show that the Fall Enterprise is an association-in-fact enterprise for purposes of RICO, and that Jon and Tyler Rickey are members of that enterprise. *See Boyle*, 556 U.S. at 944–45; *see also Sabrina Roppo*, 869 F.3d at 588–89 (plaintiff's theory that company and outside counsel

---

[5] An enterprise "need not have a hierarchical structure or a 'chain of command.'" *Boyle*, 556 U.S. at 948.

25282106.v3

comprised a RICO enterprise was substantial enough to establish subject matter jurisdiction even without detailing the relationship between enterprise members).

> **B. The facts alleged and reasonable inferences establish that Jon and Tyler Rickey engaged in RICO predicate acts.**

Plaintiff alleges that Jon and Tyler Rickey engaged in mail and wire fraud in connection with the Lockburn Property. "To prove mail fraud, the Government had to show "(1) a scheme to defraud, (2) use of the mails, and (3) [defendant's] participation in the scheme with the intent to defraud." *United States v. Agbi*, 84 F.4th 702, 708 (7th Cir. 2023); 18 U.S.C. § 1341. To be guilty of wire fraud, a defendant using wire communication must (1) devise or intend to devise a scheme (2) to obtain money or property (3) by means of false or fraudulent pretenses, representations, or promises. *See Kousisis v. United States*, 605 U.S. 114, 121, 123 (2025). *See also United States v. Kelerchian*, 937 F.3d 895, 909 n.2 (7th Cir. 2019) ("'the elements of wire fraud under 18 U.S.C. § 1343 directly parallel those of the mail fraud statute' so that 'cases construing one are equally applicable to the other.'").

The alleged scheme is to defraud the rightful heirs of the Lockburn Property by obtaining title to the property under false pretenses using a fake heir, and then obscuring the fraudulent source of title through subsequent transfers and a quiet title court action. (ECF No. 1 at 9-12). In particular, the scheme proceeded as follows:

Brennan knowingly falsely stated that she was an heir of the decedent—Juanita Goode— and was therefore entitled to the Lockburn Property. (ECF No. 1 at 9-10). Brennan made that statement in her affidavit dated December 2, 2019, which was executed in Marion County, Indiana. (ECF No. 1-3 at 2, 4, 5). 337 Congress LLC obtained title from Brennan on December 2, 2019, knowing Brennan's affidavit was false, and 337 Congress LLC falsely asserted in a warranty deed to LWIG LLC on or about March 4, 2020 in Marion County, Indiana that 337

6

Congress LLC "has good right to convey" the Lockburn Property. (ECF No. 1 at 10-11; ECF No. 1-5 at 2-3). Knowing the fraudulent source of title emanating from Brennan, LWIG LLC falsely asserted in its Complaint filed in Marion Circuit Court, cause no. 49C01-2012-PL-044323 on December 16, 2020 that its interest in the Lockburn Property was "superior to all persons." (ECF No. 1 at 11; ECF No. 1-6 at 3). LWIG LLC either made no effort to locate the true heirs of the Lockburn Property—Pamela and Stacy Goode—or intentionally chose not to serve them with the complaint. (ECF No. 1 at 11). Also on December 16, 2020, LWIG LLC conveyed the Lockburn Property to Good Timber LLC in a non-arm's-length transaction. (ECF No. 1 at 11-12; ECF No. 1-8 at 3).

These allegations satisfy "the who, what, when, where, and how" particularity requirements for alleging fraud under Rule 9(b). *See DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

One step in the plot is the use of mails to issue summonses to defendants in a quiet title action. *See Schmuck v. United States*, 489 U.S. 705, 710–11 (1989) (explaining that the use of mails as a step in the plot will suffice, even though mailing is not an essential element of the scheme). For a scheme that "naturally depend[s] on the successful passage of title," commencing a quiet title action to obtain a court's imprimatur on title is a relevant step in the scheme. *See id.* at 712.

Another step in the plot is telephone communication between Jon Rickey in California and attorney Wilburn Lowry in Indiana, and also between Jon Rickey in California and Joe Fall in Indiana, to provide direction and discuss the progress of the scheme. (ECF No. 1 at 44). Jon Rickey engaged in this communication both individually and as an agent communicating on behalf of LWIG LLC and 337 Congress LLC. (ECF No. 1 at 44). Plaintiff is not required to

plead that the wire communications contained fraudulent statements—let alone plead those communications under Rule 9(b)'s heightened standard. *See United States v. Sheneman*, 682 F.3d 623, 629–30 (7th Cir. 2012) ("Moreover, it is not necessary for the use of the wires to contain any false or fraudulent material, and even a routine or innocent use of the wires may satisfy this element so long as that use is part of the execution of the scheme."). *See also Spira v. Nick*, 876 F. Supp. 553, 559 (S.D.N.Y. 1995) ("Once the plaintiff alleges with particularity the circumstances constituting the fraudulent scheme, neither the reputational interests nor the notice function served by Rule 9(b) would be advanced in any material way by insisting that a complaint contain a list of letters or telephone calls.") (footnote omitted).

The above allegations squarely show Jon Rickey, 337 Congress LLC and LWIG LLC, for instance, were knowing participants in the mail and wire fraud scheme. Further, the allegations and reasonable inferences construed in Plaintiff's favor show that Jon and Tyler Rickey each committed mail and wire fraud by aiding and abetting the participation of 337 Congress LLC and LWIG LLC in the scheme. "It is beyond dispute that a RICO conviction may rest upon the defendant's aiding and abetting of charged predicate offenses." *United States v. Pungitore*, 910 F.2d 1084, 1132 n.68 (3d Cir. 1990); 18 U.S.C. § 2.

The elements of aiding and abetting are "that the defendant was associated with a criminal venture, that he participated in it as something he wished to bring about and that he sought by his actions to make it succeed. Thus, the prosecution must prove (1) association, i.e., that the defendant shared the criminal intent of the principal; and (2) participation, i.e., some overt act designed to aid in the venture's success." *United States v. Pope*, 739 F.2d 289, 291 (7th Cir. 1984) (internal citations omitted). No agreement between the principal and the aider or abettor is necessary, and the aider or abettor need not have knowledge of the particular means

8

used by the principal to carry out the criminal violation. *See United States v. Torres*, 809 F.2d 429, 433 (7th Cir. 1987).

As alleged, 337 Congress LLC and LWIG LLC committed mail and wire fraud by their participation in the scheme set forth above. Jon and Tyler Rickey, as owners and managers of 337 Congress and LWIG LLC, each personally made those entities available to the Fall Enterprise and directed those entities to engage in the predicate acts of mail and wire fraud in furtherance of the purposes of the Fall Enterprise. (ECF No. 1 at 3, 5-8). Jon and Tyler Rickey were part of the planning process in advance of acquiring the Lockburn Property and knew it would be taken using a fake heir to avoid paying compensation to the rightful heirs. (ECF No. 1 at 6-7, 9-12). Jon and Tyler Rickey intended for the scheme to succeed.

Instead involving themselves individually on the chain of title, Jon and Tyler Rickey each directed 337 Congress LLC and LWIG LLC to fraudulently acquire title to the Lockburn Property from Brennan and commence a quiet title action based on fraudulent title. The allegations and inferences support that Jon and Tyler Rickey had a shared criminal intent with 337 Congress and LWIG LLC, and that Jon and Tyler Rickey exercised their ownership and management rights over these companies to facilitate participation in the Lockburn Property theft scheme involving mail and wire fraud. This suffices to show Jon and Tyler Rickey committed mail and wire fraud as aiders and abettors. *See Pope*, 739 F.2d at 291.

### C.  The Complaint alleges a pattern of related RICO predicate acts.

To establish a pattern of RICO predicate acts, those acts should "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989). The Complaint's allegations show more than a collection of random, isolated violations of federal law. Defendants' activities display a similarity of purposes, results,

25282106.v3

participants and methods of commission. Jon and Tyler Rickey acknowledge that the Complaint's allegations are sufficient to depict them as serial offenders. (ECF No. 27 at 35). Hallmarks of the Fall Enterprise include the bribery of witnesses to obtain a state court's imprimatur of title to real estate that rightfully belonged to others, a series of conveyances designed to conceal the source of illicit title, and eventually converting the illicitly-gained property into cash.

A pattern of criminal activity can be shown by "(1) demonstrating a closed-ended series of conduct that existed for such an extended period of time that a threat of future harm is implicit, or (2) an open-ended series of conduct that, while short-lived, shows clear signs of threatening to continue into the future." *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 337 (7th Cir. 2019) (internal quotation and citation omitted). For the closed-ended prong, the focus is on "the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries." *Id.* (internal quotation and citation omitted).

### i. Close-ended continuity.

In acquiring the Lockburn Property, the Complaint alleges predicate acts of wire fraud, mail fraud, bribery, laundering of criminal proceeds, and monetary transactions in criminally derived property, occurring from December 2, 2019 through April 29, 2024, and victimizing two rightful heirs. (ECF No. 1 at 9-10, 43-46).

In acquiring the Oxford Property, the Complaint alleges predicate acts of fraud in connection with identification documents, wire fraud, laundering of criminal proceeds, and monetary transactions in criminally derived property, occurring from February 11, 2021 to March 7, 2024, and victimizing six rightful heirs. (ECF No. 1 at 21-24, 27-28).

10

25282106.v3

In acquiring the Winfield Property, the Complaint alleges fraud in connection with identification documents, mail fraud, wire fraud, and laundering of criminal proceeds, occurring from July 28, 2020 to February 19, 2021, and victimizing at least one rightful heir. (ECF No. 1 at 30-32, 35-36).

In acquiring the Kingsley Property, the Complaint alleges mail fraud and bribery, occurring from February 10, 2024 to October 2, 2024, and victimizing one rightful heir. (ECF No. 1 at 13–17).

The Complaint satisfies close-ended continuity by alleging 15 predicate acts (of 6 varieties) committed over a span of more than 4 years, involving 4 separate schemes and no fewer than 10 distinct victims.

### ii.   Open-ended continuity.

Additionally, an open-ended series of misconduct can be shown when "a defendant's actions pose a specific threat of repetition [or] that the predicate acts form part of the defendant's ongoing and regular way of doing business…." *Menzies*, 943 F.3d 328 at 337.

A specific threat of repetition can be shown when the scheme is not "inherently terminable." *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 829 (7th Cir. 2016). For instance, a fraudulent adoption scheme exhibited open-ended continuity where "there is no inherent limit to the number of couples seeking to adopt or to the number of children that the defendants could hold out as available for adoption." *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 411 (6th Cir. 2012) (cited with approval by *Empress Casino*, 831 F.3d at 829–30).

The overarching scheme alleged in the Complaint is the theft of real property from rightful heirs following a property owner's death. "[T]he Fall Enterprise feeds from a constant

25282106.v3

supply of potential new victims who materialize after a property owner dies intestate. Thus, the

Fall Enterprise poses a threat of continuing criminal activity extending indefinitely into the

future." (ECF No. 1 at 43). The inherently limitless supply of potential victims supports the

conclusion that the Complaint establishes open-ended continuity due to a specific threat of

repetition of Defendants' conduct. *See Heinrich*, 668 F.3d at 411.

Further, the predicate acts form part of the Defendants' ongoing and regular way of doing

business. The Complaint alleges that Jon and Tyler Rickey have done business as part of the Fall

Enterprise in the fraudulent acquisition of the Oxford, Winfield and Lockburn Properties from

2020 through 2024. (ECF No. 1 at 23, 32). The Complaint shows an ongoing and regular way

that Defendants conduct business as opposed to a single scheme that harms a single victim.

Thus, the allegations of the Complaint establish a pattern of racketeering activity by

either close-ended or open-ended continuity.

### IV.    The facts alleged and reasonable inferences support claims against Jon and Tyler Rickey for violation of 18 U.S.C. § 1962(d) (conspiracy to violate RICO).

In order to state a claim for § 1962(d) conspiracy, "a plaintiff must allege that (1) the defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity, and (2) the defendant further agreed that someone would commit at least two predicate acts to accomplish those goals…. The defendant need not personally commit a predicate act; rather, a plaintiff must allege that the defendant agreed that *someone* would commit at least two predicate acts in furtherance of the conspiracy."

*DeGuelle*, 664 F.3d at 204 (emphasis in original). "Rule 9(b) does not apply to [RICO]

conspiracy allegations." *O'Shea v. Harding*, 2017 WL 1347044, at *9 (N.D. Ind. Feb. 10, 2017),

*report and recommendation adopted sub nom. O'Shea v. Martinez*, 2017 WL 991327 (N.D. Ind.

Mar. 14, 2017).

25282106.v3

The Complaint alleges that Jon and Tyler Rickey "each knew about the Fall Enterprise's objective of targeting the Lockburn Property for acquisition without notifying the rightful heirs to that property, and they agreed to participate in the affairs of the Fall Enterprise and to facilitate a scheme that would be perpetrated by the Fall Enterprise." (ECF No. 1 at 47). Jon and Tyler Rickey "each agreed that the Fall Enterprise's objective … would require someone to commit several predicate acts to accomplish the Fall Enterprise's goal, such as bribing a witness, using mail and interstate wire communications, and laundering the property by conveyance among multiple entities." (ECF No. 1 at 47). As alleged, Jon and Tyler Rickey knew in advance that the scheme to fraudulently obtain title to the Lockburn Property would involve the commission of multiple RICO predicate acts, and Jon and Tyler Rickey each agreed to participate in the Fall Enterprise.

Jon and Tyler Rickey agreed to—and actually did—facilitate the purposes of the Fall Enterprise by directing companies they owned or managed—337 Congress LLC and LWIG LLC—to obtain the Lockburn Property from a fraudulent source, to engage in subsequent conveyances and a quiet title action designed to obscure the fraudulent source of title, and to share access to the funds resulting from the illicitly-gained property. (ECF No. 1 at 8). One can reasonably infer that Jon and Tyler Rickey agreed that the "someone" who would commit multiple RICO predicate acts would be LWIG LLC, who is alleged to have committed mail and wire fraud.

The Complaint provides a short and plain statement that notifies Jon and Tyler Rickey of the nature and purpose of the enterprise in whose affairs they allegedly agreed to participate, and the nature of the predicate acts contemplated by the enterprise. The Complaint therefore states a

13

25282106.v3

claim against Jon and Tyler Rickey for conspiracy in violation of 18 U.S.C. § 1962(d). *See*

*DeGuelle*, 664 F.3d at 204.

> **V.      The Complaint states a claim against Jon and Tyler Rickey for fraud and pecuniary loss, and constructive fraud.**

A person who "possesses, manufactures, uses, or alters a document [or] instrument…, with the intent to obtain: …property…to which the person is not entitled" commits fraud. Ind. Code § 35-43-5-4(a)(3). Fraud also lies when a person knowingly or intentionally makes a false or misleading statement, or creates a false impression, with the intent to obtain property to which they are not entitled, either for themselves or another person. Ind. Code § 35-43-5-4(a)(1)-(2). Further, one who "knowingly or intentionally engages in a scheme or artifice to commit" fraud as described in the preceding two sentences has also committed fraud. Ind. Code § 35-43-5-4(a)(4).

The Complaint recites how Brennan, 337 Congress LLC, LWIG LLC and Good Timber directly used documents including the false heirship affidavit, deeds to convey the Lockburn Property amongst themselves, and a Complaint to quiet title, with the intent to obtain property that rightfully belonged to Pamela and Stacy Goode. As discussed above pertaining to the allegations supporting a RICO conspiracy, the allegations and reasonable inferences show that Jon and Tyler Rickey each knowingly and intentionally engaged in the scheme to wrongfully obtain the Lockburn Property, and their engagement in that scheme violates Indiana Code § 35-43-5-4(a)(4).

Additionally, Joe Fall's statements to Pamela Goode were "misleading" and "created a false impression" because Pamela Goode was led to believe that the Lockburn Property had been sold in a legitimate transaction for consideration; she was not told of her inheritance rights or that the Lockburn Property had been conveyed in a series of non-arm's-length transactions following

14

Brennan's statement that Brennan was the sole heir. (ECF No. 1 at 12-13, 36-38). A real property investor who legitimately acquires a property does not initiate contact with strangers to the property years after the fact and offer compensation in exchange for a signed deed. By misleading and creating a false impression with the intent to obtain Pamela Goode's interest in the Lockburn Property to which Good Timber was not entitled, Fall violated Indiana Code § 35-43-5-4(a)(1)-(2). The statements were made during the weeks leading up to and including April 29, 2024, by phone and during a personal meeting between Pamela Goode and Fall. The allegations show the circumstances required by *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008).

Fall's actions were part of the same scheme to fraudulently obtain title to the Lockburn Property in which Jon and Tyler Rickey knowingly participated, as discussed above. Knowing participation in the scheme comprises a valid fraud claim against Jon and Tyler Rickey for a violation of Indiana Code § 35-43-5-4(a)(4).

Similarly, for constructive fraud, the allegations and inferences support that Jon and Tyler Rickey knew that the scheme in which they participated had used a fake heir to wrongfully take title to the Lockburn Property and to launder title by subsequent conveyance, and that Pamela Goode was a legitimate heir to the property. (ECF No. 1 at 39). Pamela Goode did not know this. (ECF No. 1 at 39). A reasonable inference is that Jon and Tyler Rickey had advance knowledge of Joe Fall's approach of Pamela Goode and knew that the objective was to obtain documentation from Pamela Goode in hopes of preventing the Lockburn Property theft from coming to light. Jon and Tyler Rickey withheld their superior knowledge from Pamela Goode to exploit this knowledge imbalance to obtain a deed purporting to divest Pamela Goode of her interest in the Lockburn Property. (ECF No. 1 at 39-40). Jon and Tyler Rickey's breach of good

15

faith and fair dealing by withholding superior knowledge from Pamela Goode states a claim for constructive fraud. *See Mullen v. Cogdell*, 643 N.E.2d 390, 401 (Ind. Ct. App. 1994).

**VI.    The Complaint states a claim for theft and conversion against Jon and Tyler Rickey.**

"A person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion." Ind. Code § 35-43-4-3(a). Adding the intent to deprive the victim of value, the crime becomes theft. "A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft…." Ind. Code § 35-43-4-2(a).

The allegations show that Brennan, 337 Congress LLC, LWIG LLC and Good Timber LLC knowingly and intentionally exerted unauthorized control over the Lockburn Property with the intent to deprive Pamela Goode of the value and use of that property. These persons all took title to the Lockburn Property, knowing the source of title to be a fraudulent affidavit of heirship. (ECF No. 1 at 10-12). This states a claim for conversion and theft against Brennan, 337 Congress LLC, LWIG LLC and Good Timber LLC.

Pursuant to Indiana Code § 35-41-2-4, "[a] person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense." The allegations and reasonable inferences show that Jon and Tyler Rickey each aided, induced or caused 337 Congress and LWIG LLC, companies which they each owned or controlled, to participate in the scheme to fraudulently acquire the Lockburn Property. (ECF No. 1 at 3). This aid and inducement of theft and conversion by Jon and Tyler Rickey constitutes the commission of theft and conversion by Jon and Tyler Rickey. *See* Ind. Code § 35-41-2-4. Despite Jon and Tyler Rickey's strenuous assertions that they kept their fingerprints off of the Lockburn Property,

25282106.v3

Plaintiff need not allege that Jon or Tyler Rickey is chief cook and bottle washer in order to state

a cause of action.

> ## VII. The Complaint states a claim for criminal gang control against Jon and Tyler Rickey.
>
> As used in this chapter, "criminal organization" means a formal or informal group with at least three (3) members that specifically:
> …
>    (A) promotes, sponsors, or assists in;
>    (B) participates in; or
>    (C) has as one (1) of its goals; …
>
> the commission of a felony….

Ind. Code § 35-45-9-1.

As alleged, Jon Rickey, Tyler Rickey, Joe Fall and others are members of the Fall

Enterprise, which is a group of members who assist in, participate in, and has as a goal the

commission of felony property theft. (ECF No. 1 at 5–7). The property theft qualifies as a felony

because the value of the stolen properties is greater than $750. *See* Ind. Code § 35-43-4-2(a).

These allegations establish that Jon and Tyler Rickey are members of a "criminal organization"

under Indiana Code § 35-45-9-1.

"A person who knowingly or intentionally commits an offense … with the intent to

benefit, promote, or further the interests of a criminal organization…" commits criminal

organization activity. *See* Ind. Code § 35-45-9-3(c). As discussed above, Plaintiff has stated a

claim against Jon and Tyler Rickey for the offenses of fraud, conversion and theft. Those

offenses are alleged to be in furtherance of the goals of the Fall Enterprise. The Complaint thus

alleges claims against Jon and Tyler Rickey for violation of Indiana's criminal gang control

statute. *See* Ind. Code § 35-45-9-3(c).

25282106.v3

**VIII.    Analysis of the Indiana RICO claims mirrors the analysis of the federal RICO claims.**

Plaintiff agrees with the Rickeys that Indiana's civil RICO statute does not require any different analysis than what should apply to the federal RICO statute. *See State of Indiana ex rel. Zoeller v. Pastrick*, 696 F. Supp. 2d 970, 980–81 (N.D. Ind. 2010). The enterprise and pattern elements for Indiana RICO claims are satisfied for the same reasons discussed above regarding the federal RICO statute. As for predicate acts, Plaintiff has alleged the predicates of fraud, theft, conversion and criminal organization activity against Jon and Tyler Rickey as discussed above.

**IX.    The Complaint states a claim against Jon and Tyler Rickey under the Home Loan Practices Act.**

Regarding Home Loan Practices Act, the "who, what, when, where and how" of Joe Fall's fraudulent statements to Pamela Goode are referenced above in the discussion of fraud. Joe Fall's knowing misrepresentation that the Lockburn Property had been sold and his concealment from Pamela Goode of the fraudulent source of title emanating from Brennan were deceptive acts under Indiana Code § 24-9-2-7(a). By engaging in deceptive acts in connection with a real estate transaction in which Pamela Goode executed a quitclaim deed for the Lockburn Property to Good Timber LLC, Joe Fall violated Indiana Code § 24-9-3-7(c)(3). (ECF No. 1 at 50-51).

Moreover, the Complaint alleges that "Joe Fall made these misrepresentations and concealments as an agent for and in furtherance of the objectives of each Defendant." (ECF No. 1 at 51). As previously discussed, Plaintiff has alleged that Jon and Tyler Rickey are members of the Fall Enterprise, and that Jon and Tyler Rickey agreed in advance with Joe Fall and other Fall Enterprise members to fraudulently obtain title to the Lockburn Property. Joe Fall's misrepresentations and concealments were a step in the plot, and a reasonable inference from the facts alleged is that Jon and Tyler Rickey consented to Joe Fall's contact with Pamela Goode, as

18

Jon and Tyler Rickey wanted to avoid getting their hands dirty. Joe Fall was willing to act on Jon and Tyler Rickey's behalf based on his existing relationship with them, and Jon and Tyler Rickey exerted control by defining Joe Fall's objective to get Pamela Goode to sign over her rights to the Lockburn Property. These elements of consent by Jon and Tyler Rickey, acceptance by Joe Fall, and the exertion of control by Jon and Tyler Rickey form an agency relationship. *See Glispie v. State*, 955 N.E.2d 819, 822 (Ind. Ct. App. 2011). As principals, Jon and Tyler Rickey are liable for Joe Fall's actions in obtaining the quitclaim deed from Pamela Goode by a deceptive act. *See Helms v. Rudicel*, 986 N.E.2d 302, 309 (Ind. Ct. App. 2013).

Alternatively, even without an agency relationship, Jon and Tyler Rickey accepted liability by ratifying Joe Fall's deceptive interaction with Pamela Goode, knowing that Joe Fall was deceitful and accepting the benefit attaching to Pamela Goode's conveyance of her interest in the Lockburn Property. See *Beneficial Mortgage Co. of Indiana v. Powers*, 550 N.E.2d 793, 796 (Ind. Ct. App. 1990).

### X. Plaintiff is not stating a cause of action to pierce the corporate veil because no such cause of action exists.

Piercing the corporate veil is not an independent cause of action. *See Reed v. Reid*, 980 N.E.2d 277, 297 (Ind. 2012). A Complaint should not be dismissed for failing to state a cause of action that does not exist.

### XI. The alternative motion to strike should be denied.

Jon and Tyler Rickey concede that the allegations concerning additional properties besides the Lockburn Property depict them as serial offenders. (ECF No. 27 at 35). This concession is indicative that Plaintiff has properly alleged a pattern of wrongdoing by Jon and Tyler Rickey that poses a threat of continued criminal activity. *See Gamboa v. Velez*, 457 F.3d

19

703, 705 (7th Cir. 2006). Rule 12(f) should not be used to prevent Plaintiff from pleading a necessary element of its RICO claims.

### XII.    Conclusion.

The Court should deny Jon and Tyler Rickey's motion to dismiss, and deny their alternative motion to strike.

If the Court grants the motion to dismiss under Rule 12(b)(6) or grants the motion to strike, the Court should grant Plaintiff leave to amend the Complaint, as contemplated by Rule 15(a)(2).

Respectfully submitted,

*/s/Bradley D. Hasler*
Bradley D. Hasler (Atty. # 22384-49)
DENTONS BINGHAM GREENEBAUM LLP
2700 Market Tower
10 West Market Street
Indianapolis, IN 46204
Telephone:    (317) 635-8900
Fax:              (317) 236-9907
bradley.hasler@dentons.com
*Attorney for Plaintiff, PD Finance, LLC*

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that copies of the foregoing have been served on the following via US Mail, First Class, Postage Pre-paid on this 15th day of December, 2025:

337 CONGRESS, LLC
2210 E. Southport Road
Indianapolis, IN 46227

KATHERINE BRENNAN
403 Spring Green Place
Indianapolis, IN 46229

JOE D. FALL, III
2090 N 600 E
Shelbyville, IN 46176

*/s/Bradley D. Hasler*
Bradley D. Hasler (Atty. # 22384-49)

20

25282106.v3