UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| PD FINANCE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-01603-JRO-KMB |
| | ) | |
| JOE D. FALL, III, | ) | |
| KATHERINE BRENNAN, | ) | |
| 337 CONGRESS LLC, | ) | |
| JON RICKEY, | ) | |
| TYLER RICKEY, | ) | |
| CLINT BAHME, | ) | |
| LOGAN WIGNELL INVESTMENT GROUP | ) | |
| LLC, | ) | |
| GOOD TIMBER LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING MOTIONS TO DISMISS**

Plaintiff PD Finance, LLC, assignee of claims formerly held by Pamela Goode, alleges Defendants unlawfully conspired to defraud Goode of her heirship interest in her parents' Indianapolis home. Dkt. 1. PD Finance brings a federal civil RICO claim and related state-law claims. Before the Court are motions to dismiss filed by Defendants Jon and Tyler Rickey ("the Rickeys"), dkt. 26; Good Timber LLC ("Good Timber") and Logan Wignell Investment Group LLC ("LWIG"), dkt. 35; Clint Bahme, dkt. 37; and Joe D. Fall, III, dkt. 48. Defendants argue that this Court lacks jurisdiction under the *Rooker–Feldman* doctrine and that PD Finance fails to state a claim on the merits. *See* Fed. R. Civ. P. 12(b)(1), 12(b)(6).

This Court heard oral argument on the motions to dismiss on April 15, 2026.  Counsel for the Rickeys, LWIG, Good Timber, Bahme, and PD Finance presented oral argument.  Fall, who is proceeding *pro se,* did not appear. Defendant Katherine Brennan did not file a Rule 12 motion but instead answered the complaint.  Dkt. 44.  Defendant 337 Congress LLC ("337 Congress") is in default, dkt. 40, as it was administratively dissolved before PD Finance filed this case.

For the reasons below, the Court has jurisdiction to reach the merits, but the Court agrees with the Rickeys, LWIG, Good Timber, and Bahme that PD Finance's complaint does not state a federal RICO claim against them under Rule 12(b)(6).  Without a federal claim, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.  The Court accordingly **GRANTS** the motions to dismiss at dkt. [26], [35], and [37].  Fall's motion, dkt. 48, is held in abeyance.  PD Finance may amend its complaint **within 30 days** as directed below.

## I.  BACKGROUND

In evaluating motions to dismiss under Rules 12(b)(1) and 12(b)(6), the Court accepts all well-pleaded factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor.  *Franzoni v. Hartmarx Corp.,* 300 F.3d 767, 771 (7th Cir. 2002); *Thompson v. Ill. Dep't of Prof'l Reg.,* 300 F.3d 750, 753 (7th Cir. 2002).  The Court does not, however, credit legal conclusions.  *Thompson,* 300 F.3d at 754.

Fundamentally, the Complaint alleges a conspiracy to defraud various heirs, including Pamela Goode, of their heirship interests in Indianapolis residential properties.  Plaintiff PD Finance, LLC, is a Delaware limited liability company and assignee of the claims asserted in this lawsuit.  Pamela Goode, the assignor, is an Indiana resident.  Goode's parents, Clifford and Juanita Goode, owned a home at 2502 South Lockburn Street in Indianapolis (the "Lockburn Property").  Clifford Goode died in 2013, and Juanita Goode died in 2018.  Juanita had two heirs: Pamela Goode and Michael A. Goode.  Upon Juanita's death, Pamela and Michael inherited equal shares of Juanita's ownership interest in the Lockburn Property by intestate succession.  Michael's wife, Stacy, later inherited his interest after his death in 2019.  Both Pamela and Stacy Goode were unaware of their ownership rights in the Lockburn Property.

PD Finance alleges that Defendants are among the members of a criminal enterprise (the "Fall Enterprise") associated together to defraud the rightful owners of their interest in real property.  "The Fall Enterprise's scheme begins by identifying sufficiently valuable (or potentially valuable) residential properties whose owners are deceased, intestate, and without any relatives who are paying attention to the property, which may be indicated by delinquent property taxes."  Dkt. 1 at 5.  The Fall Enterprise "then enlists someone to falsely claim heirship rights to the property through an affidavit," after which the fake heir sells the property to a Fall Enterprise member—usually an LLC entity—in a planned transaction.  *Id.* at 6.  The new owner initiates a quiet title action and acquires legal title without notifying legitimate heirs.  "The Fall Enterprise ultimately

3

renovates the property for rental or sale at market price to someone outside the Fall Enterprise, with the Fall Enterprise enjoying the gain on a property it acquired for nothing (or for a modest amount paid to the person posing as a fake heir)." *Id.* at 7.

The Fall Enterprise "core group" includes Defendant Joe Fall, Defendants Jon and Tyler Rickey (who are brothers), and Defendant Clint Bahme. It also includes nonparties Wilburn G. Lowry, an attorney who allegedly facilitated the fraudulent transactions, and Papa Tanny LLC, an entity owned and controlled by the Rickeys but not involved in the Lockburn Property chain of title. "Other recruits" include Defendant Katherine Brennan, several other nonparty individuals, and several "single-purpose entities," including Defendants 337 Congress, LWIG, and Good Timber. PD Finance alleges these LLCs "are formed and operated by the core group to help conceal the identity of the core group and in hopes of providing a shield from liability." Dkt. 1 at 7–8.

The complaint alleges facts about the Fall Enterprise's activity with respect to several properties in the Indianapolis area. As relevant to the Lockburn Property, PD Finance alleges that in December 2019, Defendant Brennan—who is not an heir of Clifford or Juanita Goode—signed a false small estate affidavit claiming to be the sole heir of the Lockburn Property. Dkt. 1-3. Brennan then signed a quitclaim deed conveying the Lockburn Property to Defendant 337 Congress LLC, an entity owned and controlled by Defendant Jon Rickey. Dkt. 1-4. In March 2020, 337 Congress conveyed the Lockburn Property to Defendant LWIG, another entity owned and controlled by Jon Rickey. Dkt. 1-5. Pamela

4

Goode had no contemporaneous knowledge of Brennan's affidavit, Brennan's quitclaim deed, 337 Congress's acquisition of the property, or the transfer of ownership from 337 Congress to LWIG.

On December 16, 2020, LWIG commenced a quiet title action in the Marion Circuit Court, naming 337 Congress as a defendant. Dkt. 1-6; *see Logan Wignell Inv. Grp., LLC v. 337 Congress LLC*, No. 49C01-2012-PL-044323 (Marion Cir. Ct. Dec. 16, 2020). Other named defendants included Brennan, Clifford B. Goode, Juanita Goode, "unknown heirs" of the named defendants, "any and all persons who might have some possible interest in said real estate," and "unknown . . . heirs or devisees of all persons appearing or recorded as an ownder [sic] or former owner" of the Lockburn Property, to include "The World." Dkt. 1-6 at 1. Pamela and Stacy Goode were not individually named as defendants in the quiet title action.

The notice and summons were served on the named defendants personally and served on "The World" by publication in the Indianapolis Business Journal. Dkts. 35-2, 35-3. LWIG "either made no effort to locate—or intentionally chose not to serve—the true heirs of the Lockburn Property: Pamela and Stacy Goode." Dkt. 1 at 11. When no defendants appeared to contest title, LWIG moved for a default judgment, dkt. 35-4 at 3–4, and on August 5, 2021, the Marion Circuit Court entered final judgment quieting title to LWIG, dkt. 1-7. LWIG in turn transferred the Lockburn Property to Good Timber, an entity owned and managed by Defendant Bahme. Dkt. 1-8.

5

In the weeks prior to April 29, 2024, Pamela Goode received Facebook messages from a third party who connected her with Defendant Joe Fall. Fall and Goode spoke by phone about "her mother's property." Dkt. 1 at 12. Fall "told her that the Lockburn Property had been sold but that the paperwork was not done correctly and needed to be fixed," and that "she and Stacy Goode would be entitled to some money based on the value of the Lockburn Property." *Id.* He "made no mention of a quiet title action affecting the Lockburn Property." *Id.* Fall and Goode arranged to meet with a notary on or about April 29, 2024, when Goode executed a quitclaim deed conveying her interest in the Lockburn Property to Good Timber. Dkt. 1-9. After Goode executed the quitclaim deed, Fall paid her $7,000 for her interest, which was well below the $100,000 market value of the Lockburn Property at the time. Dkt. 1 at 13.

PD Finance filed its complaint on August 13, 2025. PD Finance brings seven claims on behalf of Goode relating to the Lockburn Property, including fraud and pecuniary loss under Indiana Code § 34-24-3-1 (Count I); constructive fraud and fraudulent inducement (Count II); conversion, theft, and pecuniary loss under Indiana Code § 34-24-3-1 (Count III); criminal gang control and pecuniary loss under Indiana Code § 34-24-3-1 (Count IV); a federal civil RICO claim for violation of 18 U.S.C. § 1962(c) & (d) (Count V); a state civil RICO claim for violation of Indiana Code § 35-45-6-2 (Count VI); and a claim under the Indiana Home Loan Practices Act (Count VII). The Rickeys, LWIG, Good Timber, Bahme, and Fall all moved to dismiss the complaint on the grounds that the

6

Court lacks jurisdiction under Rule 12(b)(1) and the complaint fails to state a claim under Rule 12(b)(6).

Besides the allegations about the Lockburn Property, the complaint also alleges "a similar scheme" of defrauding other heirs of their ownership interests in other Indianapolis residential properties, including 4415 Kingsley Drive, 317 North Oxford Street, and 1801 Winfield Avenue. Dkt. 1 at 13–36. Neither Goode nor PD Finance claims any interest in these properties. The allegations are offered to establish a "pattern of racketeering activity by the Fall Enterprise." Dkt. 1 at 13. The motions to dismiss included requests to strike these allegations as immaterial and highly prejudicial. Dkt. 27 at 35; Dkt. 38 at 4; Dkt. 45 at 5–6; Dkt. 49 at 8.

## II.  LEGAL STANDARD

The purpose of a motion to dismiss under either Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990).

Rule 12(b)(1) requires dismissal of claims not within the subject-matter jurisdiction of the Court. Jurisdiction is the "power to decide," *Boley v. Colvin*, 761 F.3d 803, 805 (7th Cir. 2014), and federal courts may only decide claims that fall within both a statutory grant of authority and the Constitution's limits on the judiciary. *In re Chi., R.I. & P.R. Co.*, 794 F.2d 1182, 1188 (7th Cir. 1986). When considering a motion to dismiss under Rule 12(b)(1), the district court "may properly look beyond the jurisdictional allegations of the complaint and

7

view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993). The plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of proving that the jurisdictional requirements have been met. *Kontos v. U.S. Dep't of Labor*, 826 F.2d 573, 576 (7th Cir. 1987).

Rule 12(b)(6) permits dismissal only if a complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618–19 (7th Cir. 2007). A sufficient complaint need not give "detailed factual allegations," but it must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Killingsworth*, 507 F.3d at 618–19. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "While the precise level of particularity required under Rule 9(b) depends upon the facts of the case, the pleading 'ordinarily requires describing the who, what, when, where, and how of the fraud." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (quoting *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011)).

### III. DISCUSSION

The *Rooker–Feldman* doctrine does not operate to bar PD Finance's claims. The complaint seeks damages for an alleged fraudulent conspiracy among members of the Fall Enterprise. It does not invite this Court to overturn any state-court judgment or otherwise exercise appellate jurisdiction. But while the

8

Court has jurisdiction to hear this case, PD Finance fails to state a claim on the merits of its only federal claim.

## A.    The *Rooker–Feldman* Doctrine

Defendants argue that the *Rooker–Feldman* doctrine precludes the federal district court from exercising jurisdiction here.  *See Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983). Specifically, Defendants argue that PD Finance's claims should be barred because its complaint effectively asks this Court to exercise appellate jurisdiction over—that is, to review and reject—the August 2021 state-court judgment quieting title in the Lockburn Property to LWIG.  The Court disagrees.

The *Rooker–Feldman* doctrine provides that district courts lack jurisdiction to hear "'cases of the kind from which the doctrine acquired its name: [1] cases brought by state-court losers [2] complaining of injuries caused by state-court judgments [3] rendered before the district court proceedings commenced and [4] inviting district court review and rejection of those judgments.'"  *Gilbank v. Wood Cnty. Dep't of Hum. Servs.*, 111 F.4th 754, 792 (7th Cir. 2024) (en banc) (Kirsch, J., concurring in part) (alterations in original) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005)).[1]  The doctrine recognizes that federal district courts are granted only "'original jurisdiction of all civil actions' raising federal questions."  *T.M. v. Univ. of Md. Med. Sys. Corp.*, 608 U.S. ---, 2026 WL 1751823, at *5 (U.S. June 18, 2026) (quoting 28 U.S.C. § 1331).

---

[1] Judge Kirsch's partial concurrence in the Seventh Circuit's fractured *Gilbank* decision is the precedential majority opinion on the *Rooker–Feldman* issue raised in that case. *Gilbank*, 111 F.4th at 791.

Congress "d[id] not authorize district courts to exercise appellate jurisdiction over state-court judgments." *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002). Jurisdiction to review and modify a state-court judgment is reserved exclusively to the U.S. Supreme Court. *Id.*; *see* 28 U.S.C. § 1257.

"The *Rooker–Feldman* doctrine occupies 'narrow ground.'" *Taylor v. Salvation Army Nat'l Corp.*, 110 F.4th 1017, 1026 (7th Cir. 2024) (quoting *Exxon Mobil*, 544 U.S. at 283); *see T.M.*, 608 U.S. ---, 2026 WL 1751823, at *6; *Gilbank*, 111 F.4th at 791 (Kirsch, J.). It bars only those claims brought by plaintiffs "complaining of injuries caused by, and . . . seeking relief from, the state-court judgment itself." *T.M.*, 608 U.S. ---, 2026 WL 1751823, at *7; *Gilbank*, 111 F.4th at 792–93 ("*Rooker–Feldman* is confined to cases where the plaintiff asks the federal court to overturn a state court judgment."). It does not bar an "independent claim" that merely "denies a legal conclusion that a state court has reached in a case to which [the plaintiff] was a party." *GASH Assocs. v. Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993); *accord Gilbank*, 111 F.4th at 792 (*Rooker–Feldman* requires courts to "focus on the relief sought"). And it "does not apply when 'the plaintiff did not have a reasonable opportunity to raise the issue in state court proceedings.'" *Taylor*, 110 F.4th at 1026 (quoting *Brokaw v. Weaver*, 305 F.3d 660, 668 (7th Cir. 2002)).

*Rooker–Feldman* does not apply to bar PD Finance's claims here. First, PD Finance is not seeking relief from the quiet title judgment. *See Gilbank*, 111 F.4th at 793 (Kirsch, J.) ("[I]dentifying what the plaintiff has requested is the key *Rooker–Feldman* inquiry."). As its counsel affirmed at oral argument, PD Finance

10

does not seek to set aside the quiet title judgment, nor is it asking for an injunction granting title to Goode or anything similar.  Instead, PD Finance alleges a sophisticated pattern of deception practiced on unwitting property owners like Goode and seeks damages to compensate Goode for the lost value of her heirship interest.  This is an "independent claim," not a collateral attack on the validity of LWIG's title.  *See GASH Assocs.*, 995 F.2d at 728.  And *Rooker–Feldman* should not be applied when the plaintiff seeks only "damages for the unlawful conduct that misled the court into issuing the judgment." *Gilbank*, 111 F.4th at 793 (Kirsch, J.) (quoting *Johnson v. Pushpin Holdings, LLC*, 748 F.3d 769, 773 (7th Cir. 2014)).  Seeking damages is not the same thing as seeking equitable restoration of the full benefits of enjoying title.  Because PD Finance does not "extend[] the invitation to undo, reverse, or overturn" the quiet title judgment, *id.* at 795, its claims are not barred.

That PD Finance does not ask for reversal is enough.  *Gilbank*, 111 F.4th at 792.  But hearing PD Finance's claims would not require the exercise of appellate jurisdiction in any event.  Construing the complaint in a light most favorable to PD Finance, Goode's injury arises from fraudulent real-estate transactions independent of the August 2021 state-court judgment.  Quiet title judgments by their very nature give a legal imprimatur to private real estate transactions.  Thus, the complaint presumes the validity of the state court judgment quieting title to LWIG and alleges it essentially rubber-stamped the series of fraudulent convenances that are the real cause of Goode's injury.  *See*

11

dkt. 1 at 11.[2]  Thus, PD Finance's claims do not require review and rejection of the state court judgment, which is the essence of appellate review and what the *Rooker-Feldman* doctrine forbids district courts to exercise.  *T.M.*, 608 U.S. ---, 2026 WL 1751823, at *15 (Thomas, J., concurring) ("the 'criterion which distinguishes appellate from original jurisdiction, is that it revises and corrects the decisions of another tribunal'" (quoting *Ex parte Bollman*, 8 U.S. (4 Cranch) 75, 86 (1807)).  This explains why the Seventh Circuit does not apply *Rooker–Feldman* when the injury "was not caused by the state court, but by its adversary's conduct" out of court.  *Zurich Am. Ins. Co. v. Super. Ct. for State of Cal.*, 326 F.3d 816, 822 (7th Cir. 2003).  Here, the fraud perpetrated against Goode was, "at most, 'an independent prior injury that the state court failed to remedy' and not an injury 'caused by the state court judgment.'"  *Andrade v. City of Hammond*, 9 F.4th 947, 950–51 (7th Cir. 2021); *accord Gilbank*, 111 F.4th at 793 (Kirsch, J.).  And "federal courts retain jurisdiction to award damages for fraud that imposes extrajudicial injury."  *Iqbal v. Patel*, 780 F.3d 728, 730 (7th Cir. 2015).

Goode's absence from the quiet title proceedings in state court provides another prudential reason to avoid applying *Rooker–Feldman* here.  Indeed, Goode did not even learn that title to the Lockburn Property had passed to anyone until nearly three years later.  It is true that Goode was technically a state-court loser in the quiet title action, as she was part of "The World" that

---

[2] The section of the complaint relating to the Fall Enterprise's fraudulent purchase of 317 North Oxford Street does not even allege that a quiet title action was involved, indicating that this device was not central to the conspiracy's purposes.

12

LWIG listed among the defendants.  (For that matter, so was every lawyer appearing in this action, as well as the Court.)  But unlike the plaintiffs in *Rooker* and *Feldman,* Goode did not appear in the quiet title action to contest the proceedings.  The *Rooker–Feldman* doctrine is intended to prevent dissatisfied state-court parties from wielding an appellate review power that federal district courts cannot exercise.  *T.M.*, 608 U.S. ---, 2026 WL 1751823, at *7–8.  It does not close the federal courthouse door to a party "merely seek[ing] to litigate its . . . case for the first time"—after all, that is essentially what original jurisdiction is.  *See Johnson v. De Grandy,* 512 U.S. 997, 1006 (1994).

For this reason, the Seventh Circuit has repeatedly declined to apply *Rooker–Feldman*'s jurisdictional bar when the plaintiff "was absent from the underlying litigation and judgment in state court."  *Mitchell v. Durham Enters., Inc.*, 99 F.4th 978, 986 (7th Cir. 2024) (citing *De Grandy,* 512 U.S. at 1006); *see Kan. City S. Ry. Co. v. Koeller,* 653 F.3d 496, 504 (7th Cir. 2011); *Sheetz v. Norwood,* 608 F. App'x 401, 404 (7th Cir. 2015).  Goode did not litigate title to the Lockburn Property in the Marion Circuit Court.  Neither did PD Finance, which did not even exist until 2025.  *See* dkt. 27 at 15 n.2.  And no one in this lawsuit seeks to litigate title now.  *Rooker–Feldman*'s scope is narrow, and it should not be overextended to cover this case.  The Court retains jurisdiction.

**B.    Federal RICO Claim**

The Racketeer Influenced and Corrupt Organizations Act ("RICO") establishes a private right of action for treble damages for "[a]ny person injured in his business or property by reason of a violation of" the statute.  18 U.S.C.

§ 1964(c).  PD Finance alleges a violation of 18 U.S.C. § 1962(c).  To state a claim under this section,

> the plaintiff must allege that the defendant (1) was employed by or associated with (2) an enterprise engaged in, or the activities of which affected, interstate or foreign commerce, and (3) that the person conducted or participated in the conduct of the enterprise's affairs (4) through a pattern of racketeering activity.

*Haroco, Inc. v. Am. Nat'l Bank & Tr. Co. of Chi.*, 747 F.2d 384, 387 (7th Cir. 1984). A "pattern of racketeering activity" is defined as at least two occurrences within ten years of any of several predicate offenses, including mail fraud.  18 U.S.C. § 1961(5).

As explained below, PD Finance does not state a claim for a violation of Section 1962(c).  The complaint does not sufficiently allege that the Rickeys, LWIG, Good Timber, or Bahme participated in any association-in-fact enterprise. Nor does the complaint identify a pattern of racketeering activity involving these defendants with sufficient particularity to put them on notice of the alleged wrongdoing.  PD Finance's RICO claim as to these defendants must therefore be dismissed.

### 1.    Participation in an Enterprise

"A RICO complaint must identify the enterprise."  *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 645 (7th Cir. 1995).  PD Finance alleges an "association in fact" enterprise made up of Defendants and other individuals and LLCs "orchestrated by Joe Fall" for a "common purpose" of acquiring title to real property "by defrauding rightful property owners." Dkt. 1 at 5.  PD Finance refers to this group as the "Fall Enterprise." *Id.*  The Rickeys, LWIG, Good Timber, and

14

Bahme allege that PD Finance does not sufficiently plead their participation in the Fall Enterprise.  The Court agrees.

Under RICO, an "association in fact" enterprise is a "union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4). "While a RICO enterprise can be formal or informal, some type of organizational structure is required."  *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000).  An association-in-fact enterprise "must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."  *Boyle v. United States*, 556 U.S. 938, 946 (2009); *see United States v. Turkette*, 452 U.S. 576, 583 (1981) (association-in-fact is "a group of persons associated together for a common purpose of engaging in a course of conduct").  These elements—purpose, relationships, and longevity— distinguish "a truly joint enterprise where each individual entity acts in concert with the others to pursue a common interest" from "a run-of-the-mill commercial relationship where each entity acts in its individual capacity to pursue its individual self-interest."  *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 655–56 (7th Cir. 2015).  As an esteemed judge in this District has observed, the task is to "ascertain whether . . . with respect to the alleged fraudulent activity, the individual entities were operating as a single entity."  *Obiefuna v. Hypotec, Inc.*, 451 F. Supp. 3d 928, 949 (S.D. Ind. 2020).

Even if a RICO complaint sufficiently alleges an enterprise, "it must also establish that the 'person' associated with the enterprise *conducted or*

15

*participated,* 'directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.'" *Richmond*, 52 F.3d at 646 (emphasis added) (quoting 18 U.S.C. § 1962(c)). "To be liable under § 1962(c), that person 'must participate in the operation or management of the enterprise itself,'" that is, "'conduct or participate in the conduct of the enterprise's affairs, not just their own affairs.'" *Id.* (cleaned up) (quoting *Reves v. Ernst & Young,* 507 U.S. 170, 185 (1993)).

The Court does not decide at this time whether the complaint sufficiently alleges that the Fall Enterprise is an association-in-fact RICO enterprise. It is sufficient to conclude that PD Finance's allegations with respect to the Rickeys and Bahme do not establish that these individuals participated in the Fall Enterprise. Mere allegations of an ownership or management interest in LLCs involved in real estate transactions are not sufficient to establish that the owners personally participated in an ongoing organization pursuing the common interest of defrauding true heirs like Pamela Goode. Summary allegations that the parties communicated with each other in furtherance of the fraud do not move the needle further, as they conflate predicate acts with the independent element of participation in the enterprise itself. *Boyle*, 556 U.S. at 947; *Crichton v. Golden Rule Ins. Co.,* 576 F.3d 392, 399–400 (7th Cir. 2009). Bahme is additionally alleged to have owned the real property where Fall and others engaged in predicate acts. But as Bahme's counsel asserted at oral argument, that fact does not independently permit a reasonable inference that Bahme knew

16

of or acted to further the criminal purpose of the Fall Enterprise either at that meeting location or at any other time.

The allegations against LWIG and Good Timber are similarly deficient. A series of related real-estate transactions among entities known to each other does not rise above a "run-of-the-mill commercial relationship" without more facts establishing an illegal purpose shared among all involved. *Crichton*, 576 F.3d at 399 (citing *Reves*, 507 U.S. at 185) (plaintiff must allege members "controlled and conducted the enterprise rather than merely [their] own affairs"). PD Finance does not point to any "unusual degree of economic interdependence," coordinated planning, or mutual involvement in the same course of conduct among the LLCs. *See Bible*, 799 F.3d at 656–57 (specific details showing that "entities d[id] not operate as completely separate entities" permitted reasonable inference of participation in an enterprise). PD Finance alleges only common ownership and control, which is insufficient by itself to imply concerted action. *Richmond*, 52 F.3d at 645–46. Because PD Finance does not sufficiently plead that the Rickeys, LWIG, Good Timber, or Bahme participated in an enterprise, its RICO claim against these defendants fails.[3]

---

[3] PD Finance's claim that the Rickeys, LWIG, Good Timber, and Bahme conspired to violate RICO, as prohibited under 18 U.S.C. § 1962(d), also fails. Participation in the affairs of an enterprise—which includes sharing a common purpose—is a necessary element of claims under both Section 1962(c) and (d). *Domanus v. Locke Lord LLP*, 847 F.3d 469, 479 (7th Cir. 2017). So if the complaint does not state a claim for a violation of Section 1962(c) as to these defendants, PD Finance's Section 1962(d) claim "based on the same facts must fail as well." *Stachon*, 229 F.3d at 677.

## 2.    Racketeering Activity

Nor does PD Finance sufficiently plead racketeering activity with respect to the Rickeys, LWIG, Good Timber, or Bahme.  RICO defines "racketeering activity" as any violation of certain listed federal and state laws; each instance of unlawful conduct is known as a RICO predicate act.  18 U.S.C. § 1961(1); *see Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1019 (7th Cir. 1992).  A civil RICO plaintiff must allege predicate acts that sound in fraud with particularity.  Fed. R. Civ. P. 9(b).  Particularity means the plaintiff "must allege 'the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'"  *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 729 (7th Cir. 1998) (quoting *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994)).  The plaintiff must also allege facts—not conclusory statements—"from which it reasonably may be inferred that the defendants engaged in the scheme with fraudulent intent."  *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994).  The particularity requirement ensures that both the defendants and the Court have "sufficient information to determine whether or not a pattern of racketeering activity has been established."  *Id.*  The requirement to identify who committed each act of fraud is especially important where, as here, the plaintiff "accuses multiple defendants of participating in the scheme to defraud."  *Id.* (citing *Vicom*, 20 F.3d at 778).

18

PD Finance alleges the following predicate acts:

- Mail fraud in violation of 18 U.S.C. § 1341, by all Defendants. Dkt. 1 ¶ 207. Specifically, Defendants "used the mails" with fraudulent intent in furtherance of their scheme "by serving summons by mail on the named defendants in the quiet title action." *Id.* ¶ 209.

- Wire fraud in violation of 18 U.S.C. § 1343, by all Defendants. Dkt. 1 ¶ 204. Specifically, PD Finance alleges "telephone communication between Jon Rickey in California with Joe Fall and Wilburn G. Lowry in Indiana to provide direction and discuss the progress of the scheme," and "telephone communication between Jon Rickey in California, as agent for LWIG, LLC and as agent for 337 Congress LLC, with Joe Fall and Wilburn G. Lowry in Indiana to provide direction and discuss the progress of the scheme." *Id.* ¶ 206. The complaint provides no further detail about these calls.

- Bribery under Indiana law, by all Defendants, relating to their intent that Brennan file a false heirship affidavit in the quiet title action and withhold truthful testimony that she was not actually an heir. Dkt. 1 ¶ 212.[4]

- Laundering criminal proceeds in violation of 18 U.S.C. § 1956(a)(1)(B)(i), by 337 Congress and LWIG, based on the

---

[4] Because Brennan's false heirship affidavit was never filed in the quiet title action, she was never actually a witness to an official proceeding. PD Finance's counsel conceded at oral argument that this fact renders the bribery allegations irrelevant. The Court accordingly does not consider those allegations in its analysis.

19

conveyance of the Lockburn Property from one LLC to the other. Dkt. 1 ¶ 213.

- Laundering criminal proceeds in violation of 18 U.S.C. § 1956(a)(1)(B)(i), by Fall and Good Timber, "by knowing that the Lockburn Property was the proceeds of a criminal transaction," and by "conducting a financial transaction involving the Lockburn Property" with the knowledge that paying Pamela Goode for her April 2024 quitclaim deed "was designed to conceal or disguise the nature, source, or control of the proceeds." Dkt. 1 ¶¶ 213, 214.

- Monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957, by Good Timber, relating to its eventual lease of the Lockburn Property to tenants and collection of rent payments. Dkt. 1 ¶ 215.

PD Finance's first attempt to plead that the Rickeys, LWIG, Good Timber, or Bahme engaged in the foregoing predicate acts of racketeering activity, as required to show a violation of Section 1962(c), is insufficient.

First, the predicate acts sounding in fraud are not pled with sufficient particularity under Rule 9(b). The allegation that Defendants fraudulently "used the mails" merely lumps all the Defendants together. Nothing supports a reasonable inference that any of them specifically directed or participated in the service of summons. LWIG was represented in the quiet title action by Wilburn G. Lowry, not a defendant here, who presumably carried out the ministerial tasks related to the lawsuit (as the allegation recognizes by including him). If PD

20

Finance wishes to implicate anyone else in the "who" or "what" of the mail fraud, it must be more specific about each person's and entity's alleged involvement. The allegations of wire fraud are also vague. Phone calls furthering the fraudulent Lockburn Property scheme could indicate criminal intent. But the complaint does not describe "what" was discussed or "when" the calls occurred. Nor does it identify any phone calls involving Tyler Rickey or Bahme, despite the allegation that "Defendants," collectively, "used interstate wires."

As to the other predicate acts, for which only general pleading is necessary, PD Finance's allegations likewise fail. The predicate acts of laundering criminal proceeds and monetary transactions in property derived from specified unlawful activity are attributed only to the LLCs, not to the Rickeys or Bahme. An LLC is a corporate form—a statutory creation that acts only through its agents. *Trail v. Boys & Girls Clubs of Nw. Ind.*, 845 N.E.2d 130, 138 (Ind. 2006); *see also* Ind. Code §§ 23-18-3-1.1, 23-18-4-1(a). While the complaint elsewhere explains that the Rickeys and Bahme act as agents for the LLCs they respectively own or control, the allegations at paragraphs 213 through 215 do not specifically impute wrongful intent to anyone with the authority to bind or act for LWIG or Good Timber with respect to the transfers or rent collection. They do not specify which individuals acted, whether they acted within the scope of their authority, or whether their actions were intended to benefit the LLCs or only to enrich themselves for their own individual purposes. *Cf. Heritage Christian Schs. v. ING N. Am. Ins. Corp.*, 851 F. Supp. 2d 1154, 1159–60 (E.D. Wis. 2012) (RICO liability only imputed to principal when plaintiff demonstrates agents acted under

21

apparent authority and for the principal's benefit).  Simply put, the LLCs' place in the chain of title, standing alone, does not support a plausible inference of those entities' intent to participate in any individual's fraudulent behavior. These allegations do not establish that the LLCs committed the necessary predicate acts of racketeering activity.

In sum, the federal RICO claim under 18 U.S.C. § 1962(c) in PD Finance's initial complaint does not survive a motion to dismiss as to the Rickeys, LWIG, Good Timber, or Bahme.

## C.    State-Law Claims

PD Finance alleges subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 (original jurisdiction over claims arising under federal law) and 28 U.S.C. § 1367 (supplemental jurisdiction over state-law claims forming part of the same case or controversy).  Dkt. 1 at 2.  PD Finance does not allege that diversity jurisdiction exists.

Having dismissed PD Finance's federal RICO claim, over which the Court has original jurisdiction, the Court retains only supplemental jurisdiction over the remaining state-law claims.  A district court "may decline to exercise supplemental jurisdiction" over a state-law claim if "the district court has dismissed all claims over which it has original jurisdiction."   28 U.S.C. § 1367(c)(3).  "[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial."  *Ratfield v. U.S. Drug Testing Lab'ys, Inc.*, 140 F.4th 849, 854 (7th Cir. 2025).  "[O]nly in 'unusual cases' may a district

court exercise its discretion to assert its supplemental jurisdiction based upon the balance of the factors of 'judicial economy, convenience, fairness and comity.'" *Burritt v. Ditlefsen*, 807 F.3d 239, 252 (7th Cir. 2015) (quoting *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994)).

Here, no departure from the usual practice is required. Dismissal of the entire complaint will best serve judicial economy at this stage. Many of the same underlying allegations—with the same particularity problems noted above—support multiple counts. The state-law claims did not receive significant focus either in the parties' briefing or at oral argument. The Court also sees no reason why it would be less convenient or fair for the parties to proceed in state court on these claims rather than in federal court. For these reasons, the Court declines to exercise supplemental jurisdiction and will **DISMISS** the remaining claims **without prejudice.**

## IV.  CONCLUSION

Because PD Finance fails to state a federal claim against the Rickey Defendants, LWIG, Good Timber, or Bahme, and the Court declines to exercise supplemental jurisdiction over the remaining state law claims, the Court accordingly **GRANTS** the motions to dismiss all of PD Finance's claims as to these defendants. Dkts. [26], [35], and [37]. The motions to strike are **DENIED AS MOOT.**  Fall's motion, dkt. 48, is held in abeyance at this time.

If PD Finance seeks to amend its complaint in an effort to overcome the deficiencies identified above, *see* Fed. R. Civ. P. 15(a)(2), it must do so **within 30 days of the date of this Order.**  Because the amended complaint will replace

the original, it must list all claims and defenses PD Finance wishes to pursue in this action.

**SO ORDERED.**

Date: 7/8/2026

_____

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

All CM/ECF-registered counsel of record

JOE D. FALL, III
2090 N 600 E
Shelbyville, IN 46176

KATHERINE BRENNAN
403 Spring Green Pl
Indianapolis, IN 46229

337 CONGRESS, LLC
c/o Steve Smith, Registered Agent
337 Congress Ave.
Indianapolis, IN 46208